# W. D. WARD

### V.

# DWIGHT HARPER

Record No. 840751

September 4, 1987

Present: All the Justices

*Wilson F. Vellines, Jr. (Rhea, Vellines & Garrison*, on briefs), for appellant.
*Ronald W. Vaugh (Erwin S. Solomon & Associates*, on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

The question presented in this appeal from a final decree in a suit in equity is whether the trial court properly determined that a prescriptive easement had been established by the evidence.

The subject of this dispute is an unimproved road in Highland County that runs from State Route 625 across property of appellant W. D. Ward through mountainous terrain to land of appellee Dwight Harper. Harper filed the present suit in 1978 seeking an injunction against Ward from interfering with Harper's use of the road and requesting the court to determine the rights of the parties to the use of the way. Upon referral, a commissioner in chancery heard evidence ore tenus, viewed the premises, and filed a report in 1982.

The commissioner reported that the evidence established an easement by prescription in favor of Harper and recommended that a permanent injunction be entered restraining and enjoining Ward from interfering with Harper's use of the roadway. The chancellor overruled Ward's exceptions to the commissioner's report and, in a letter opinion, confirmed it. We awarded this appeal to Ward from the final decree entered in February 1984.

The standard of review in a case like this is settled. When a report of a commissioner in chancery who heard evidence ore tenus has been fully approved by the trial court, the decree of the court confirming the report is presumed to be correct and will not be reversed on appeal unless plainly wrong. *Pavlock* v. *Gallop*, 207 Va. 989, 994, 154 S.E.2d 153, 157 (1967). Even though such a report is not entitled to the weight given a jury verdict on conflicting evidence, the report is entitled to "great weight," especially when the findings of the commissioner have been approved by the trial court. *Id.* at 994-95, 154 S.E.2d at 157. Our duty then is to determine whether the conclusions of the commissioner, approved by the trial court, are supported by credible evidence. *Surf Realty Corp.* v. *Standing*, 195 Va. 431, 436, 78 S.E.2d 901, 904 (1953).

The principles applicable to the merits of this case have been stated recently in *Pettus* v. *Keeling*, 232 Va. 483, 352 S.E.2d 321 (1987), a case virtually identical factually to the present case. To establish a private right of way by prescription over lands of another, the claimant must prove, by clear and convincing evidence, that his use of the roadway was adverse, under a claim of right, exclusive, continuous, uninterrupted, and with the knowledge and acquiescence of the owners of the land over which it passes, and that the use has continued for at least 20 years. Where there has been an open, visible, continuous, and unmolested use of a road across the property of another for the pre-

scriptive period, the use will be presumed to be under a claim of right, and places upon the owner of the servient estate the burden to rebut this presumption by showing that the use was permissive, and not under a claim of right.

We further stated in *Pettus*, relying on another recent case, *Burks Brothers of Va. Inc.* v. *Jones*, 232 Va. 238, 349 S.E.2d 134 (1986), that where the use of a way by persons owning property in the immediate area has been in common with the use of the roadway by members of the general public, the essential element of exclusiveness is lacking because the use of the roadway is dependent upon the enjoyment of similar rights by others, and no rights by prescription arise. But when each landowner asserts his own right to use the way, independent of all others, and no rights are dependent upon the common enjoyment of similar rights by others, prescriptive rights may arise. In other words, when each user independently asserts his right to enjoy the roadway for himself, that use may be exclusive, even though other persons assert similar rights for themselves. 232 Va. at 486, 352 S.E.2d at 324.

Ward, emphasizing evidence and inferences that are favorable to his case and at odds with the facts as found by the commissioner, advances several principal contentions on appeal. He argues that use of the road was with the implied permission of Ward's predecessor in title, one Charles Gum, that Harper's use of the way was not exclusive, and that the use was not continuous, open, and uninterrupted for a period of 20 years. We disagree with Ward's contentions and find that the conclusions of the commissioner and the chancellor are supported by credible evidence.

A detailed recital of the evidence is unnecessary. In essence, Harper established that the road, the origin of which was unknown, had been used for logging operations as early as 1937. The tract to which the road runs had been in his family for 75 years or more when the commissioner's hearing was held in 1979. Harper acquired the property from his parents and began cutting timber on his property in 1938, hauling logs and lumber "down the road" from that time until "about 1966." Ward purchased his tract in 1968 from the heirs of Gum. He immediately locked a gate across the road and posted a sign prohibiting trespassing, eventually generating this litigation.

Harper testified that, during the time he, his parents, and his grandparents owned the tract in question, "several hundred thou-

sand feet" of timber had been hauled by them over the road. This was done "at least once and maybe twice" each year, whenever timber was needed and whenever timber was ready to be harvested. The road was used for this purpose only "every six months" because, according to the testimony, it "takes years [to] grow a crop of timber." Harper stated that in 1966 he used the road "five, six, or seven times" to take up "machinery" to "skid" timber and then on three additional occasions to remove the timber with trucks. He stated that between 1937 and 1965 he saw Mr. or Mrs. Gum, who lived near the road, "hundreds of times" as the Harpers used the way. Also, Harper testified on cross-examination that, in addition to using the road for logging operations during the period, he "used it on numerous occasions to go back up in there . . . to get to my property."

Leo Samples, a local resident who had lived "on" the road from 1938 to 1950, testified that the Harper family "hauled logs and extract and pulp wood down over the . . . road" during that period. He stated this occurred once or twice a year, whenever it was necessary to "get some timber or wood out." Samples testified without objection that Mr. Gum told him in 1935 that "Mr. Harper . . . has a right-of-way through here," referring to the road in question. Samples said that one "use" of the roadway for timbering operations actually involved as many as 10 or 12 truckloads of wood hauled over a period of "a week or two."

■ The foregoing evidence, which was clear and convincing, supports the commissioner's conclusion that the use of the way was open, visible, continuous, and uninterrupted for at least 20 years. Manifestly, the use was open and visible: timber was hauled in full view and obvious to those who lived along the way.

■ Moreover, the Harpers' activity along the road was continuous from at least 1937 through 1966, a period of 29 years. Ward contends the use was not continuous but was "sporadic" and "of an indefinite nature." That contention disregards the evidence. To be continuous, a use need not be daily, weekly, or even monthly. *Pettus*, 232 Va. at 488, 352 S.E.2d at 325. In determining continuity, the nature of the easement and the land it serves, as well as the character of the activity must be considered. Here, mountain land in a remote area was employed in seasonal timber operations. There was credible evidence to support a finding of the requisite continuity.

And, the use was uninterrupted. As the commissioner noted, the right of way was never blocked until Ward placed a lock on the gate and refused to give Harper a key to the lock.

Accordingly, the foregoing elements having been proved, the use by the Harpers is presumed to have been under claim of right. And Ward, although offering some evidence on the subject, failed to establish that the use was permissive. Ward argues that Harper merely proved that he used the way in common with other persons owning land in the area, for similar purposes as those other landowners, and under tacit permission given them all by Gum. This contention likewise disregards credible evidence relied on by the commissioner and chancellor.

Gum himself believed that Harper possessed a right of way. As Harper argues, permission cannot be implied from a landowner who recognizes that the alleged permittee has a right of way over the landowner's property. In addition, the road was not public and there was no sufficient showing that the Harpers' use of the way was not asserted independently of all other landowners or that the Harpers' use of the road was dependent upon the enjoyment of similar rights by others. Indeed, implicit in the testimony is the fact that the Harpers' use of the way was independent of similar rights of other users and hence was exclusive. Compare *Martin* v. *Proctor*, 227 Va. 61, 313 S.E.2d 659 (1984), relied upon by Ward, which, in a factually inapposite situation, involved prescriptive rights claimed against family members.

Finally, and proof of these elements is not vigorously attacked by Ward, adverse use was proved, as well as knowledge and acquiescence of the Gums. Harper did not ask permission from Gum to use the road because Harper assumed he had a right to use the way and there was credible evidence that Gum never consented to the Harpers' use of it. The Gums, aware of the Harpers' use, merely acquiesced and never denied access to the Harpers or protested their use of the way.

Consequently, we cannot say that the decree of the trial court confirming the commissioner's report is plainly wrong. Therefore, the decree will be

*Affirmed.*