Present: Carrico, C.J., Compton, Stephenson,[*] Lacy, Keenan, and
  Koontz, JJ., and Poff, Senior Justice

C. LEONARD WILLIS,
TRUSTEE, ETC., ET AL.
                          OPINION BY JUSTICE A. CHRISTIAN COMPTON
v.  Record No. 962217              September 12, 1997

ROBERT L. MAGETTE,
TRUSTEE, ET AL.

               FROM THE CIRCUIT COURT OF ISLE OF WIGHT COUNTY
                        Westbrook J. Parker, Judge

     In this appeal from a final decree in a chancery suit, the
questions presented are whether the trial court properly
determined that a prescriptive easement had been established by
the evidence; that the easement had been used during the
prescriptive period for agricultural, logging, recreational, and
residential purposes; and that the width of the easement was 30
feet.

     At trial, abandonment of the easement was an issue.
However, at the petition stage of this appeal, we affirmed the
trial court's ruling that the easement had not been abandoned by
refusing the assignment of error relating to that issue.

     The subject of this dispute is a 559-foot lane in Isle of
Wight County that runs generally north from State Route 665
across property of appellants C. Leonard Willis, Trustee of the
C. Leonard Willis, Inc. Pension Plan, and Hampton Promotions,
Inc., to land of appellees Robert L. Magette, Trustee, and Rea
Parker, Jr.

_____

     [*]Justice Stephenson participated in the hearing and decision
of this case prior to the effective date of his retirement on
July 1, 1997.

Magette and Parker filed the present suit in 1995 against Willis and Hampton Promotions asking the trial court to declare that a prescriptive easement over defendants' property exists for ingress and egress to their land, and "that said easement is of reasonable width and configuration to allow the passage of vehicles and farm implements used to access and cultivate [their land], but not less than 15'." The plaintiffs wish to develop their land for residential purposes.

Following an April 1996 ore tenus hearing at which testimonial and documentary evidence was presented, the chancellor ruled in favor of the plaintiffs, owners of the alleged dominant estate.

In a letter opinion, the court stated there was "no question that the evidence establishes a prescriptive easement in favor of the plaintiffs." The chancellor found that the "lane has been used for many purposes since the 1920's including agricultural, logging, recreational and residential uses." Observing that the "only issue in this case is the width of the easement," the court decided that the plaintiffs "have an easement across the property of the defendants 30 feet in width (15 feet on each side of the centerline of the lane) for the purposes set forth herein." We awarded the defendants, owners of the alleged servient estate, this appeal, limited to consideration of the foregoing issues.

The principles applicable to this case are settled. To establish a private right of way by prescription over land of

another, the claimant must prove, by clear and convincing evidence, that use of the way was adverse, under a claim of right, exclusive, continuous, uninterrupted, and with the knowledge and acquiescence of the owners of the land over which it passes, and that the use has continued for at least 20 years. Ward v. Harper, 234 Va. 68, 70, 360 S.E.2d 179, 181 (1987). If the use of a way across property of another for the prescriptive period has been open, visible, continuous, and unmolested, the use will be presumed to be under a claim of right; this places upon the owner of the servient estate the burden to rebut this presumption by showing that the use was permissive, and not under a claim of right. Id. at 70-71, 360 S.E.2d at 181.

The standard of review in this case likewise is settled. A finding of the chancellor on conflicting evidence, heard ore tenus, carries the same weight as a jury's verdict and will not be disturbed on appeal unless it is plainly wrong or without evidence to support it. Code § 8.01-680; Cushman Virginia Corp. v. Barnes, 204 Va. 245, 254, 129 S.E.2d 633, 640 (1963); Rogers v. Runyon, 201 Va. 814, 816, 113 S.E.2d 679, 680 (1960). The chancellor's decree has resolved all such conflicts in favor of the plaintiffs, and we must consider the evidence in the light most favorable to them.

The plaintiffs established that their land, a 590-acre tract known as Macclesfield Farm, situated approximately 500 feet north of Route 665, had been acquired by one Nanny E. Simmons, also

known as Nannie E. Johnson and Nannie E. Spivey, by 1903 and 1905 deeds. Simmons conveyed the property to Algie J. Murphy and wife by a 1951 deed. Plaintiff Parker purchased the land in 1956 and transferred a partial interest in it to plaintiff Magette in 1995.

In 1991, defendants acquired four parcels of land near Route 665. Two of the parcels border Macclesfield Farm and lie between the farm and Route 665. The way in question runs along the interior, north-south boundary line between defendants' two parcels.

The disputed lane, referred to by one witness as "Parker Farm Lane," was described variously as "a dirt, muddy road," "just a country lane really" with "ruts" in a single set of "tire tracks" that were "the width of a . . . car."

The plaintiffs relied upon testimonial and documentary evidence to establish the easement, its use, and its dimensions. For example, Dennis Spady testified he had hunted and farmed corn, wheat, peanuts, and soy beans on Macclesfield Farm since 1969. He stated that from 1969 to 1989, the way in question "mainly" provided "exclusive access" to the farm from Route 665.

In connection with the farming, Spady used the lane to "carry" a grain combine to the premises. That equipment needed 15 to 20 feet of roadway. He also drove tractors, disc harrows, "breaking plows and all types of equipment" over the lane, with the "widest piece of equipment" measuring about 20 feet.

Spady described the road as being "terrible" because "so many other people had been trespassing through there, they just tore the road up." When asked on cross-examination whether he believed he was trespassing on the property owned by defendants' predecessor in title, Spady replied, "It never really crossed my mind. The road, you know, I've always -- we've always used it."

Plaintiff Magette testified he had been familiar with Macclesfield Farm since "the early 50s." When the Murphys owned the property, they consulted Magette, who is in "the water business," regarding their "water system." During the early 1950s, Magette travelled the way in question in his automobile to reach a house on the farm where the Murphys resided. Magette also testified that he had used the lane in question "to access the farm" about 18 times and that he never asked "anybody's permission to go down the lane," which led "[s]traight into the house."

Magette also stated that Mr. Murphy used the lane "regularly" because it was "the only way in and out." Further, Magette testified that the house, and a barn on the property, burned on a date he could not remember.

James Harold Reynolds, a county resident for 77 years, testified he had been familiar with Macclesfield Farm for at least 65 years. As a child, Reynolds knew the persons who resided there, including the Simmons family. He said the lane in question existed 65 years ago and that "it was a narrow road in

there, but a lot of people lived there, you know, and -- in and out and then people farmed the land and took farm equipment in and out of there."  Reynolds also said he "used to hunt down there before Rea Parker bought it."

Reynolds stated the path had been used over the years by "horse and buggy, carts, farm equipment" and later by automobiles.  He said he never heard "of anyone asking or giving permission to use the road," stating, "It's always been there, you know."

Harry Garland DeShields, Jr., age 70, testified he had been familiar with Macclesfield Farm for over 40 years.  During the late 1950s to the late 1960s, he had been to the farm "several times on duck hunting trips," driving the way in question, which was the only access, in his automobile.  During this period, DeShields saw evidence of farm activity there and that the house was occupied.  He recalled the house burned in the early 1960s.

Jerry Rose, a logger, testified he was familiar with Macclesfield Farm because he had been involved in removing cut timber from the farm over the way in question for about five months just before the ore tenus hearing.  Based upon his examination of the land, Rose opined that logging operations also had been conducted there in "about '60 or '65."  He found the way to be 14-16 feet wide, which was not "consistent" with a 25-foot width that is "needed to log the property."

The documentary evidence offered by the plaintiffs included

a 1928 survey of a portion of Macclesfield Farm that shows the access road in question at the location claimed by the plaintiffs. Also, a 1938 deed shows that Simmons sold timber and timber rights on the farm. The deed refers to the 1928 survey and to use of "the lane or driveway leading from the highway to the residence on the above land in transporting said timber and trees, manufactured lumber and other wood products."

Additionally, the 1951 deed from Simmons to Murphy reserved to Simmons for life use of a portion of "the dwelling house in which she now resides" and use of "the lane leading to the public road." Also, a 1991 plat of a portion of defendants' land shows one boundary line of Macclesfield Farm joined by a "dirt road" connecting to Route 665.

The foregoing facts demonstrate that the trial court's judgment upon the establishment of the way, and its uses, is not plainly wrong or without evidence to support it. Given the testimonial evidence and the documentary facts, which are not dispositive but can properly be considered with the other evidence in the case, the plaintiffs clearly and convincingly have proved use of the way was open, visible, continuous, and uninterrupted for at least 20 years.

Certainly, the use was open and visible. Farming operations, including travel along the way of all types of farm equipment, were obviously in full view. Also, logging operations employing heavy equipment likewise were in full view.

- 7 -

Moreover, the activity along the path was continuous for at least 20 years, dating from the 1938 timbering operations to at least the time when the residence burned in the early 1960s and extending to Spady's activities up to 1989. Contrary to defendants' contention, the use was not merely sporadic. To be continuous, a use need not be daily, weekly, or even monthly. Pettus v. Keeling, 232 Va. 483, 488-89, 352 S.E.2d 321, 325 (1987). "In determining continuity, the nature of the easement and the land it serves, as well as the character of the activity must be considered." Ward, 234 Va. at 72, 360 S.E.2d at 182. Here, there was evidence of constant use of one dwelling house located at the end of the path from Route 665. Also, unimproved, somewhat remote, rural land was employed in seasonal farming, logging, and recreational activity.

Furthermore, the use was uninterrupted. There is no evidence of any attempt to block the way during the prescriptive period.

Because the plaintiffs proved the foregoing elements, their use, and that of their predecessors in title, is presumed to have been under a claim of right. And, the defendants offered no evidence to rebut this presumption by showing that the use during the prescriptive period was permissive.

Consequently, we hold the trial court did not err in ruling that an easement had been established for the prescriptive period for the purposes of agricultural, logging, recreational, and

residential uses.

This leaves for decision the width of the easement. We hold the trial court erred in fixing a 30-foot width.

We point out that this issue does not relate to the _degree_ of use of the way, only to the _dimensions_ of the easement. When, as here, an easement by prescription has been established, the width of the way and the extent of the servitude is limited to the character of the use during the prescriptive period. _Pettus_, 232 Va. at 489-90, 352 S.E.2d at 326; _Board of Supervisors_ v. _Norfolk and W. Ry. Co._, 119 Va. 763, 773, 91 S.E. 124, 128 (1916). Even though a reasonable increase in the degree of use may be permissible in such an easement, _Virginia Hot Springs Co._ v. _Lowman_, 126 Va. 424, 430, 101 S.E. 326, 328 (1919), an increase in width to envelop additional land is not allowed. _Hash_ v. _Sofinowski_, 487 A.2d 32, 36 (Pa. Super. 1985).

There is no evidence that the width during the prescriptive period was greater than 20 feet. Spady testified that the pieces of farm equipment used on the dominant tract during that period required "15 to 20 feet" of roadway. S. V. Camp, a surveyor called by the plaintiffs, stated that the "roadway itself" was 20 feet wide. Rose, the logger, said the way was 14-16 feet wide and that it was not "a 25 foot wide lane." Other witnesses stated the lane was 10-12 feet wide, the width of one set of motor vehicle "wheel tracks."

Consequently, we will reverse that portion of the final

decree fixing the width of the easement.  We will modify the decree to provide that the plaintiffs are entitled to a prescriptive easement across the property of the defendants 20 feet in width, ten feet on each side of the center line of the existing path or lane, for the purposes of agricultural, logging, recreational, and residential uses, and will enter final judgment here on the decree as modified.

<u>Affirmed in part,</u>
<u>Reversed in part,</u>
<u>Modified, and final judgment.</u>