# CIRCUIT COURT OF WARREN COUNTY

Solid Gold Corp. et al.

v.

David R. Gehr et al.

October 18, 1999

Case Nos. (Chancery) 98-140 and 98-163

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on October 15, 1999, for trial on the issue of whether the Plaintiff had a prescriptive easement to maintain an advertising sign on a neighbor's property. The sign was originally constructed and maintained by the consent of the parties, and the principle issue in this case is whether the consensual use changed to a hostile use under claim of right that ripened into a prescriptive easement. All the parties' prefiled exhibits were admitted, and evidence was heard and argued. Upon consideration whereof, the Court has decided that the Plaintiff does not have a prescriptive easement to maintain the sign.

## I. *Findings of Fact*

The following facts are found by the greater weight of the evidence.

The Plaintiff owns a motel at the western entrance to Front Royal, Virginia. The motel property is approximately ninety feet west of U.S. Routes 522/340, which is the major entrance from the west into the Town of Front Royal. The motel property is the dominant estate served by the sign.

When the motel was originally constructed, verbal permission was granted to the motel owners to erect and maintain an electrically illuminated sign advertising the motel on the extreme southwestern corner of the property now

owned by the Defendant Lehew. Originally, there was a gas station on the Lehew property, but that use has now changed. The former gas station or Lehew property is the servient estate, which is burdened by the sign's presence.

Since the sign was constructed, sometime in the 1950's, it has been turned off and on at night by the motel owners, painted, and otherwise maintained by the motel owners. About 1979 or 1980, the motel owners changed the sign from neon to an electric panel sign, whose marquee message could be changed, and which message was changed from time to time.

In the summer of 1998, Lehew advised the motel owners that he wanted their use of the sign to cease, and this present litigation was precipitated.

Lehew purchased his property from Irene Johnson, who had acquired the land as *feme sole*, by deed dated May 27, 1983, from Bernard O. Phelps and Beulah F. Phelps. Sometime after Mrs. Johnson acquired the gas station property, her husband, Mr. Johnson, who was not on the deed, told one of the owners of the motel property, that he wanted them to take down the sign, and that motel owner told Mr. Johnson that they would not take the sign down.

On June 14, 1978, the Phelpses acquired the motel property. Since there is no question but that prior to the Phelpses the motel owners maintained the sign with the consent of the owners of the gas station tract, the change from permissive to hostile use would have to have begun during the Phelpses' ownership, otherwise the requisite twenty years will not have run.

Beulah Phelps, who was one of the owners of the servient estate (gas station property) from 1978 to 1983, testified that she and her husband knew that the sign belonged to the motel. Phelps Deposition, p. 8-10, 13. She said "there was no hassle about that [the motel maintaining the sign]. We knew that the sign belonged to Cool Harbor [the motel]." Phelps Deposition, p. 16. When asked about whether the motel owners had the Phelps' consent to maintain the sign on the Phelps' property, Mrs. Phelps repeatedly responded that "We were neighbors." Phelps Deposition, p. 26, 30. She said that Mr. Lehew, the grandfather of the defendant Lehew, had been orally permitted to place and maintain the sign by the Marlow sisters who owned the servient estate before the Phelpses. Phelps Deposition, p. 29.

Other than the 1983 incident between Mr. Johnson and Chris Cristensen, who was then one of the owners of the motel, there was no proof of any incident in which the motel owners told the owners of the gas station property that they were claiming a right to use the gas station property as opposed to relying on the original consent, and none of the deeds or documents executed incident to the various conveyances of either the servient or dominant estate ever mentioned the sign or any right of the owners of the motel property to

maintain the sign. Nor was there any act, other than the 1983 Johnson incident, which would have indicated to the owners of the servient estate that the motel owners were claiming that they had a right to maintain the sign as opposed to continuing under the original neighborly consent and accommodation.

This present suit was filed on September 22, 1998.

## II. *Conclusions of Law*

As the Supreme Court recently restated in *Willis v. Magette*, 254 Va. 198, 200-201, 491 S.E.2d 735 (1997):

> To establish a private right of way by prescription over land of another, the claimant must prove, by clear and convincing evidence, that use of the way was adverse, under a claim of right, exclusive, continuous, uninterrupted, and with the knowledge and acquiescence of the owners of the land over which it passes, and that the use has continued for at least 20 years. *Ward v. Harper*, 234 Va. 68, 70, 360 S.E.2d 179, 181 (1987). If the use of a way across property of another for the prescriptive period has been open, visible, continuous, and unmolested, the use will be presumed to be under a claim of right; this places upon the owner of the servient estate the burden to rebut this presumption by showing that the use was permissive, and not under a claim of right. *Id.* at 70-71, 360 S.E.2d at 181.

In this case, the original entry and use of the servient estate was permissive.

In *Martin v. Procter*, 227 Va. 61, 65, 313 S.E.2d 659 (1984), the Supreme Court considered the issue of the change in the nature of the possession where the original entry was permissive and ruled:

> When the use originates by permission, it is presumed to continue with permission unless the conduct of the user is sufficient to apprise the owner of the servient tenement that the user is asserting a claim adverse and hostile to his rights. "An easement will not arise by prescription simply from permission of the owner of the servient estate, no matter how long the permissive use may continue. [Citations omitted]. And having begun by permission, it will, in the absence of some decisive act on the part of the owner of the dominant estate indicating an adverse and hostile claim, continue to be regarded as permissive, especially when the latter's use of the easement is in

common with its use by others." [Citations omitted]. *Witt v. Creasey*, 117 Va. 872, 876, 86 S.E. 128, 129 (1915).

Absent such a decisive act on the part of a neighbor using a road opened by a landowner for his own use, the neighbor can never acquire a prescriptive easement.

As stated in 25 Am. Jur. 2d, *Easements and Licenses*, § 67:

> A permissive use is presumed to continue, but a use permissive in its inception may subsequently ripen into an easement by prescription if the user in fact has become adverse. For example, a grantee of an easement for a specific purpose may use the easement for a different purpose and thereby obtain a right by prescription to the whole extent of his user. To transform a permissive use into an adverse one, however, there must be a distinct and positive assertion of a right hostile to the owner, which is brought to his attention, and the adverse use must be for the full period required to acquire such right, excluding the time that the user was permissive.

There is no discussion in the authorities as to what type of decisive action is required by the owner of the dominant estate to put the owner of the servient estate on notice of the fact that the owner of the dominant estate is now asserting a hostile, adverse right to use the servient estate. The acquisition of rights by prescription or adverse possession is founded on the premise that where a person uses property as his own under claim of right, after a time that long, continued use will actually ripen into title. "The foundation of a right by prescription is acquiescence of the owner of the servient tenement in the acts relied on to establish the easement by prescription. Acquiescence is here used in its ordinary sense; it does not mean license or permission in the active sense, but means passive assent or submission, quiescence, or consent by silence." 25 Am. Jur. 2d, *Easements and Licenses*, § 61. In other contexts, the Supreme of Virginia has said that "acquiescence ... is ... the failure to protest or object." *Stanley's Cafeteria, Inc. v. Abramson*, 226 Va. 68, 74, 306 S.E.2d 870 (1983); *accord May v. Martin*, 205 Va. 397, 404, 137 S.E.2d 860 (1964).

In this case, the original entry was by consent, so there was no reason for the owner of the servient estate to object to the use of his property by the motel owners until the consent was withdrawn. The character of the use, which is always of paramount importance in prescriptive easement cases, has been substantially the same throughout the alleged period of prescriptive use, so there was no decisive change in the character of the use which would put

the owner of the servient estate on notice that a claim of right to maintain the sign was being asserted by the motel owners. Moreover, there was no decisive act with respect to the title such as a deed purporting to convey the right to maintain the sign, nor was there was any proof of any discussion among the owners of the property, other than the Johnson incident in 1983, which would have given actual or imputed notice to the owners of the gas station property, that the motel owners were claiming a legal right to maintain the sign.

In this case, there was no proof an any act more than twenty years before the filing of the bill of complaint, which was decisive enough to place the owners of the servient estate on notice that the motel owners use of the sign had changed from permissive to a hostile claim of right. Arguably, the only incident which even comes close would be the 1983 incident involving the motel owners and Mr. Johnson, and this was only fifteen years before the filing of the bill of complaint not the requisite twenty. While Mr. Johnson was not precisely identified by the evidence, it is reasonable to conclude that he was the husband of the owner of the gas station property, but technically he was a stranger to the title of the property.

Whether a structure, such as a sign, is owned by the person who erected the structure or becomes part of the realty and thus owned by the landowner is determined either by an agreement establishing the nature and ownership of the property or by applying a three part test found in *Danville Holding Corp. v. Clement*, 178 Va. 223, 16 S.E.2d 345 (1941). *Adams Outdoor Advertising Limited Partnership v. Long*, 253 Va. 206, 483 S.E.2d 224 (1997). Until the present dispute, the gas station owners always conceded that the motel owners actually owned the sign, but ownership of the sign is not the same thing as a legal right to maintain the sign. In this case, by agreement, the sign when initially constructed belonged to the motel owners, and nothing has changed that; so the sign continues to belong to the owners of the motel property.

## III. *Decision*

For the foregoing reasons, an injunction will enter requiring the Plaintiff to remove the motel sign from the Defendant Lehew's property within ninety days of the date of entry of the final decree. The Plaintiff shall also restore the ground which may be damaged by the sign's removal.