PRESENT:  Carrico, C.J., Lacy, Hassell, Koontz, Kinser, and
Lemons, JJ., and Compton, S.J.

THE INVESTOR ASSOCIATES,
ET AL.                                          OPINION BY
                                    SENIOR JUSTICE A. CHRISTIAN COMPTON
v.  Record No. 001919                        June 8, 2001

ROBERT O. COPELAND, ET AL.


        FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                    A. Bonwill Shockley, Judge

        In this chancery suit involving controversy among partners

of a Virginia general partnership, the central issues, driven by

application of the proper statute of limitations, deal with who

is indebted to whom and which of the partners have the right to

wind up the partnership affairs under former Code § 50-37.

        The former Uniform Partnership Act, Code §§ 50-1 through -

43.12, which was repealed effective January 1, 2000 (Acts 1996,

ch. 292), applies in this suit.  Thus, we shall refer only to

the former statutes.

        In August 1994, the following plaintiffs filed this suit:

The Investor Associates (hereinafter Investors); Herbert L.

Kramer, individually and as assignee of all rights, title and

interest of Benjamin J. Levy in Investors; Jeffrey L. Kramer;

Richard G. Kramer; and Edward A. Kramer.  Named as defendants in

the bill of complaint were Robert O. Copeland, Herbert J.

Zukerman, and Property Investments Associates, also known as

Property Investments of America, Inc. (hereinafter PIA).

The plaintiffs alleged that by an October 1983 agreement among the individual plaintiffs and defendants and PIA, Investors, a Virginia general partnership, was formed.  The plaintiffs asserted that the partnership had been dissolved by operation of law, citing various Code sections.

In the bill of complaint, the plaintiffs sought the following relief:  An accounting of partnership affairs under Code § 50-22; dissolution of the partnership by the court under Code § 50-32, if it had not already been dissolved by operation of law; contribution from the defendant copartners under Code § 50-34; an order granting plaintiffs the right to wind up the partnership affairs under Code § 50-37; an order under Code § 50-38 for application of the partnership's property to discharge its liabilities and for appropriate distribution of the surplus, if any; and, an order under Code § 50-40 settling the accounts among copartners after dissolution.

The plaintiffs further requested, relying on the terms of the October 1983 agreement, that if it were determined "there is a cash loss of over the initial capitalization of The Investor Associates," the loss be assessed against the copartners in the same proportions as their percentages of ownership in the partnership, and that a judgment be entered against each of the copartners as their liability may appear.

In an answer, Copeland and Zukerman (hereinafter defendants) joined in the bill of complaint and asked for a formal accounting. They asserted "it is not clear" that the partnership had been dissolved by operation of law, but "in any event" joined plaintiffs' motion to dissolve and to wind up the partnership affairs.

Further, defendants asserted that plaintiffs have spent funds in violation of the partnership agreement and, thus, defendants owed no funds. Additionally, defendants asserted that they are the proper partners to wind up the partnership affairs and that the plaintiffs should not be allowed to wind up. However, defendants joined in the plaintiffs' request for settlement of the accounts, distribution of the proceeds, and liquidation of the partnership assets.

Defendants affirmatively asserted "that laches and the statute of limitations bar any claim against them from any of their partners." Additionally, defendants alleged that plaintiffs "do not come into equity with clean hands and as a consequence are barred from any contribution from their partners . . . and are further barred from the right to wind up the partnership or otherwise deal on behalf of the partners or the partnership."

In a counterclaim, defendants sought judgment against plaintiffs, alleging that plaintiffs created unnecessary losses

by violating the terms of the partnership agreement and that "the Plaintiffs breached their fiduciary duties against the Defendants."

In a May 1996 order, the chancellor referred the matter to a commissioner in chancery. In a December 1996 order, the court amended the style of the suit because plaintiff Herbert L. Kramer had died while the suit was pending. The other Kramer plaintiffs as "co-personal representatives of the Estate of Herbert L. Kramer" were substituted for the deceased, their father, as parties plaintiff.

The commissioner held hearings during six days from May to October 1997, during which he heard testimony ore tenus and received voluminous documentary evidence. Following receipt of arguments and briefs of counsel, as well as proposed findings of fact and conclusions of law, the commissioner submitted a report in September 1999. The commissioner recommended that the court rule against the plaintiffs and grant the defendants' request for relief contained in the answer.

The chancellor considered the record, the commissioner's report, exceptions to the report, and argument and briefing by counsel. In a May 2000 decree, incorporating a letter opinion and rulings from the bench that adjudicated the principles of the cause, the chancellor confirmed the commissioner's report,

4

the counterclaim having been nonsuited in March 2000.  The plaintiffs appeal.

The plaintiffs agree on appeal that the factual findings of the commissioner, approved by the chancellor, are correct.  Therefore, we will summarize those findings that are pertinent to the issues we shall address.

In the October 1983 agreement, the Kramers, Benjamin J. Levy, PIA, and the defendants formed Investors, capitalized for the total sum of $200,000.  Levy, as well as Herbert L. Kramer, was deceased at the time of the commissioner's report.  The deceased individuals comprising Investors, and the surviving partners, were intelligent and sophisticated businessmen, knowledgeable about construction, law, finance, and tax matters.

The apparent purpose of the partnership was to place various real estate investment entities owned by the various partners under one management, and to share in the overall profits and losses.

On January 1, 1984, Herbert L. Kramer, Benjamin Levy, and the Kramer brothers (Jeffrey L., Richard G., and Edward A.) formed another general partnership known as Kramer/Levy Associates (KLA), not a party to this suit.  The Kramers and Levy used KLA to loan money to various other partnerships in which they had interests.

Numerous loans, advances, and other payments were made by the plaintiffs through KLA to Investors over the years that this arrangement continued. None of the loans was evidenced by any promissory note. Checks written to and by KLA are the only evidence of the loans.

At the commencement of the commissioner's hearings in May 1997, the parties stipulated that Investors had no assets, and that Levy and all the Kramers had filed for bankruptcy protection. The parties further stipulated that Investors was dissolved by operation of Code § 50-31(5) (the bankruptcy of any partner).

Code § 50-30 provided that a partnership is not terminated upon dissolution "but continues until the winding up of partnership affairs is completed." Code § 50-37 provided that partners, "not bankrupt, have the right to wind up the partnership affairs;" but that any partner "upon cause shown, may obtain winding up by the court."

The commissioner noted that all the surviving plaintiff partners of Investors were bankrupt. He then found that "[a]lthough there is substantial evidence of an acrimonious relationship between parties Plaintiff and Defendant, no evidence has been introduced to indicate that the Defendants are not proper persons to wind up any remaining business of the partnership." Thus, the commissioner recommended that the court

6

adjudicate Investors had been dissolved, but not terminated; and, that the defendants be entrusted to wind up the partnership affairs.

Crucial to the winding up and settlement of the accounts will be the determination of who is indebted to whom. On appeal, as below, the plaintiffs take the position that the KLA partnership was a mere "conduit" for the plaintiffs to make loans or other advances to Investors. Under this theory, the plaintiffs say that Investors is liable to them for the funds loaned or advanced. The defendants take the position that the Kramers and Levy loaned money to KLA, which, in turn, loaned the money to Investors and others. The commissioner stated: "The issue here boils down to determining the identity of the lender who made the loans and/or advances to Investors, the real party in interest. Is the real lender to Investors the Kramer family and/or Levy; or, is KLA the real lender to Investors?"

The significance of this issue relates to the statute of limitations. According to defendants, the plaintiffs developed the "conduit theory" in an attempt to avoid the statute of limitations of either Code § 8.01-246(4) (three years-unwritten contract) or Code § 8.01-246(2) (five years-written contract). The plaintiffs, defendants point out, seek to bring their claim within the limitations set forth in Code § 8.01-246(3), which provides: "In actions by a partner against another for

7

settlement of the partnership account . . . within five years from the cessation of the dealings in which they are interested together."  The plaintiffs realize, the defendants say, that in order to advance their argument that § 8.01-246(3) governs, they must convert the loans from KLA, which clearly was not a partner, to loans from a partner.  Hence, the Kramers created their conduit theory.

In order to determine the identity of Investors' lender, the commissioner reviewed the evidence.  He focused upon bankruptcy schedules filed by the Kramers under penalties of perjury.  The commissioner reported that the schedules "do reflect adversely on their credibility in this proceeding as do the Plaintiffs' (including the deceased Mr. Kramer's) income tax returns, financial statements, the estate tax return for the deceased Mr. Kramer, the books of Investors, the books of KLA, and their attempts to explain them away."

The commissioner said:  "In short, all of the records of Investors and KLA, including KLA's tax returns, show that the money went from the Kramers to KLA . . . to Investors.  In all of these documents, the Kramers treated the money as a loan from them to KLA and not as a loan to Investors.  Further, the Kramers treated the money as a loan from KLA to Investors, as did KLA."

8

The commissioner further found that the Kramers, KLA, and Investors "are or were (at all pertinent times) distinct legal entities." He said that assertions on financial statements, estate tax returns, income tax returns, books of account, and other business records "all mean something." The commissioner observed: "We cannot simply disregard the Plaintiffs' course of conduct over the many years that Investors and KLA operated, nor can we disregard same based on the Plaintiffs' testimony that the use of KLA was a convenience."

In concluding that the debt of Investors was in favor of KLA, not the plaintiffs, the commissioner stated that "the over-riding factor appears to me to be the way in which the Plaintiffs have changed their perception of what has occurred in the past, a past fully documented by the Plaintiffs' records and other records not technically theirs but records of business entities under their control."

Among other issues reported upon, the commissioner made no finding or recommendation relative to the statute of limitations question, but observed that the three-year limitation found in Code § 8.01-246(4) controls both the KLA and Copeland loans to Investors.

In her February 2000 letter opinion confirming the commissioner's report, the chancellor ruled that the partnership was dissolved upon the Kramers filing bankruptcy, that

9

defendants are entitled to wind up the partnership affairs, and that the Investors' debt is owed to KLA, not the Kramers. While the commissioner found that the clean hands doctrine had been violated by the plaintiffs, the chancellor saw no "need to reach" that question, or others raised by the parties.

During a March 2000 hearing, the trial court considered the statute of limitations issue. Following argument of counsel, the court ruled from the bench that the three-year limitation period governing oral contracts controlled, and that the partners responsible for winding up the affairs of the partnership are entitled to invoke that defense on behalf of Investors.

All the foregoing rulings were incorporated in the May 2000 order appealed from, including the decision that, in winding up the affairs of Investors, the defendants "do not have to pay the debts due Kramer/Levy Associates or Robert Copeland, because the debts are barred by the three year statute of limitations."

On appeal, the plaintiffs first contend the trial court erred when it ruled that Investors' debt is owed to KLA, and not to the Kramers individually. There is no error in this ruling.

"When a report of a commissioner in chancery who heard evidence ore tenus has been fully approved by the trial court, the decree of the court confirming the report is presumed to be correct and will not be reversed on appeal unless plainly

10

wrong." Ward v. Harper, 234 Va. 68, 70, 360 S.E.2d 179, 181 (1987). Upon review of such a decree, the appellate court's duty is to determine whether the conclusions of the commissioner, approved by the chancellor, are supported by credible evidence. Id.

A further discussion of the evidence is unnecessary to demonstrate the obvious, that is, the factual findings upon the foregoing issue are fully supported by the evidence. Agreeing that the commissioner "made the factual finding, consistent with the undisputed evidence, that all loans and advances to [Investors] were made by the Kramers funneling money through [KLA]," the plaintiffs nevertheless persist to advance the theory that KLA performed mere "conduit" functions. Without citing any law directly supporting their idea, the plaintiffs argue that KLA "was the Kramers' agent, created for the purpose of administering the Kramers' contractually required loans made to or for the benefit of [Investors] and any other investments in which the Kramers and Levy were jointly interested." This argument is no more than an attack upon the factual findings below, which are supported by credible evidence.

Second, plaintiffs contend the trial court erred in ruling that defendants should wind up Investors' affairs. They argue that they have shown "cause" under Code § 50-37 to be entitled to wind up because defendants will plead the statute of

11

limitations eliminating their individual liability for their debt to Investors, and the plaintiffs will not. There is no merit in this contention.

As we have said, Code § 50-37 provided that partners who are not bankrupt have the right to wind up the partnership affairs, but the court may allow any partner, "upon cause shown," to wind up. The phrase, "upon cause shown," does not mean just any cause. The statute vests the court with the discretion to select which partners will wind up, giving preference to partners who are not bankrupt.

Here, the defendants are the only nonbankrupt partners. The fact that they will perform their fiduciary duty to plead available defenses eliminating liability to Investors, including their own, does not disqualify them from serving, nor does it justify a finding that the trial court abused its discretion.

Finally, plaintiffs contend the trial court erred in ruling that defendants are entitled to raise on behalf of Investors "a defense that a three year oral contract statute of limitation bars [KLA's] claim against [Investors] on the debt." In the same vein, plaintiffs contend the trial court erred by ruling that defendants, in winding up, do not have to pay their share of Investors' debt because the debt is barred by the three-year statute of limitations. We disagree with these contentions.

12

As we already have indicated, partners owe each other a fiduciary duty in winding up the partnership affairs. Code § 50-21(1) expressly provided that one partner is accountable to the others as a fiduciary for "any transaction connected with the . . . liquidation of the partnership." Thus, the trial court correctly ruled defendants may raise the statute of limitations defense on behalf of Investors.

Moreover, the trial court correctly decided that the three-year statute of limitations for oral contracts set forth in Code § 8.01-246(4) governs, and bars KLA's claims. At issue is the recovery of debts to be included in the accounting and the statute of limitations against a creditor, of which KLA is one. The sums paid by KLA were demand loans made by checks premised on an oral contract, the right of action accruing and the statute of limitations commencing to run on the date of the checks without any formal demand. See Guth v. Hamlet Assoc., 230 Va. 64, 72, 334 S.E.2d 558, 563-64 (1985) (demand note matures and is payable at once, and interest and statute of limitations commence to run on that date); former Code § 8.3-104(2)(b). Accord Bell v. Alexander, 62 Va. (21 Gratt.) 1, 6 (1871) (check is obligation payable on demand).

In summary, we hold that the trial court committed no error in deciding the foregoing issues. And, we have considered the

remaining arguments made by plaintiffs, and have determined they are without merit.

Consequently, we will affirm the order appealed from and will remand the cause to the trial court for such further proceedings as may be necessary to wind up the partnership affairs.

<u>Affirmed and remanded</u>.