PRESENT: Carrico, C.J., Lacy, Hassell, Koontz, Kinser, and Lemons, JJ., and Compton, S.J.


MILTON R. MARTIN, ET AL.

v.  Record No. 011980

MICHAEL TODD MOORE, ET AL.

OPINION BY
SENIOR JUSTICE A. CHRISTIAN COMPTON
MICHAEL TODD MOORE, ET AL.                 April 19, 2002

v.  Record No. 012016

MILTON R. MARTIN, ET AL.


FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
Dennis J. Smith, Judge Designate

In these two appeals arising from a single chancery suit, we consider issues relating to prescriptive easements, nuisances, and damage to realty.

In May 1999, plaintiffs Michael Todd Moore, Jeffrey Lee Moore, Joey Herbert Moore, and F. L. Moore & Sons, Inc. filed a bill of complaint against defendants Milton R. Martin and Shirley J. Martin. The plaintiffs sought to enjoin defendants from interfering with plaintiffs' use of an entrance road or driveway leading from U.S. Route 460 in Campbell County to plaintiffs' property where they operate a trucking business. The plaintiffs also sought a declaration that they had a right to such use by virtue of an easement.

In an answer, defendants denied plaintiffs were entitled to the relief sought. Defendants "affirmatively alleged that the Entrance Road is virtually completely on the property of the Defendants," and that the plaintiffs had been granted "a permissive license to use the Entrance Road."

In a cross-bill, defendants claimed plaintiffs were guilty of trespass, both as the result of use of the driveway and as the result of contamination of a lake situated on property owned by defendants adjacent to plaintiffs' property. Also, defendants alleged plaintiffs' activities constituted a private nuisance.

The defendants sought to enjoin plaintiffs from use of the entrance road "for any purpose whatsoever" and "from operating a trucking business on the Property." Additionally, defendants asked that plaintiffs "be assessed with monetary damages to defer the costs of removing silt" from their lake.

Following a March 2000 ore tenus hearing, during which the chancellor inspected the property in question, the court determined that the plaintiffs had established a right to use a portion of the driveway by virtue of a prescriptive easement. Ruling on the cross-bill, the court decided defendants had not proved that the trucking operation constituted a private nuisance. However, the court determined defendants' evidence established that their property rights in the lake had been

2

"substantially impaired" by siltation, and "that a repair to the siltation could be done for approximately" $26,000.

In a June 2001 final decree, the trial court memorialized the foregoing rulings, which included entry of judgment in favor of the defendants for $26,000. We awarded separate appeals to the plaintiffs and the defendants.

On appeal, addressing the issue raised by the bill of complaint, the defendants contend the trial court erred in ruling that the plaintiffs established an easement by prescription giving them a right to use a portion of the entrance road owned by defendants.

Employing settled principles of appellate review, we shall recite the facts pertinent to this issue, including the legitimate inferences flowing from those facts, in the light most favorable to the plaintiffs, who prevailed below.

Route 460 at the location in question extends in a generally east-west direction. Formerly, the defendants owned a 50.15-acre tract of land lying adjacent to and south of the highway. From this tract, the defendants conveyed three separate parcels to the Bryants, the plaintiffs' immediate predecessors in interest.

First, in 1969 the defendants conveyed a one-acre parcel abutting the highway right-of-way. Bryant built a home upon this parcel and began operating a trucking business there.

3

Second, in 1973 defendants conveyed a one-half acre parcel lying immediately to the south of the one-acre parcel to enable Bryant to expand his trucking business. Finally, in 1976 they conveyed a 5.75-acre parcel adjoining the one-half acre parcel to the south because Bryant "needed it" for his trucking operations.

When the one-acre parcel was conveyed, an entrance and an "old road," extending south down a hill and west into the defendants' property, were the sole means of access from Route 460 to the 50.15-acre tract. The Bryant deed to the one-acre parcel included a portion of the entrance. A pin located in the middle of the joint entrance marked the boundary line between the defendant Martins' land and the Bryants' one-acre parcel. According to Mr. Martin, "I sold him half the driveway at the top of the hill so he would have entrance to his house."

The plaintiffs purchased the three Bryant parcels in 1997, and have been operating a trucking business on the premises since that time.

The entrance and the "old road" were located in the same place as the present entrance and roadway now being used by the plaintiffs and the defendants for access to and from Route 460 for their respective properties. The plaintiffs claimed they were entitled to a right of way over only a small portion of the roadway. The portion partially crosses over the boundary line between the plaintiffs' and defendants' land, and extends from

4

the Route 460 entrance south down the existing road to the area in front of an "old shop" located on the one-acre parcel. The final decree granted the plaintiffs an easement to use this portion of the road.

The law applicable to establishment of prescriptive easements is settled. In order to establish a private right of way by prescription over property of another, the claimant must prove, by clear and convincing evidence, that the claimant's use of the roadway in question was adverse, under a claim of right, exclusive, continuous, uninterrupted, and with the knowledge and acquiescence of the owner of the land over which it passes, and that the use has continued for at least 20 years. Ward v. Harper, 234 Va. 68, 70, 360 S.E.2d 179, 181 (1987); Pettus v. Keeling, 232 Va. 483, 485, 486-87, 352 S.E.2d 321, 323-24 (1987). Accord Nelson v. Davis, 262 Va. 230, 235, 546 S.E.2d 712, 715 (2001).

When there has been open, visible, continuous, and unmolested use of a road across the property of another for the prescriptive period, the use will be presumed to be under a claim of right, and places upon the owner of the servient estate the burden to rebut this presumption by showing that the use was permissive and not under a claim of right. Ward, 234 Va. at 70-71, 360 S.E.2d at 181; Pettus, 232 Va. at 485, 352 S.E.2d at 323-24. Accord Nelson, 262 Va. at 235, 546 S.E.2d at 715. This

5

presumption of a grant or adverse right is prima facie only and may be rebutted by evidence to the contrary. Chaney v. Haynes, 250 Va. 155, 159, 458 S.E.2d 451, 453 (1995).

The standard of appellate review applicable here is clear. The findings of a chancellor, who heard the evidence ore tenus, carry the weight of a jury verdict. Tauber v. Commonwealth, 255 Va. 445, 452, 499 S.E.2d 839, 843, cert. denied, 525 U.S. 965 (1998). A judgment based upon such findings will not be reversed on appeal "unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it." Code § 8.01-680.

We hold that the trial court correctly determined the plaintiffs presented facts sufficient to establish by clear and convincing evidence the basic elements of an easement by prescription. The use of the joint entrance and the portion of the joint driveway serving the one-acre parcel began by the Bryants in 1969. The use of the portion of the driveway serving the one-half acre parcel began by the Bryants in 1973. The use of the entrance and length of the driveway for access to the 5.75-acre parcel began in 1976.

The foregoing use was continuous by the Bryants, and then by the plaintiffs, as each conducted a trucking business on the three parcels. The use was uninterrupted until May 3, 1999, when defendants wrote plaintiffs contesting their use of the

6

driveway and entrance. Five days later, defendants blocked the entrance road, which act precipitated this lawsuit. Therefore, the use was in excess of 20 years.

Moreover, there is no dispute the parties knew that a portion of the joint entrance and joint driveway was on the defendants' side of the property line. Clearly, the use of the entrance and the driveway by the Bryants, and then by the plaintiffs, for their trucking operations was open and obvious, and known to the defendants. Also, the evidence shows that the defendants did nothing to stop or protest the Bryants', and then the plaintiffs', use of the entrance and driveway until the May 1999 letter.

Accordingly, the plaintiffs were entitled to the rebuttable presumption that their use, and that of their predecessors in title, was adverse. The question then becomes whether the defendants proved that the use by the Bryants and the plaintiffs was permissive, and not adverse.

Circumstantial evidence may not be used to establish permissive use in cases involving joint driveways. "There must be a positive showing that an agreement existed." Causey v. Lanigan, 208 Va. 587, 593, 159 S.E.2d 655, 660 (1968).

The evidence established that the defendants acquiesced in the Bryants' and the plaintiffs' use of the joint entrance and joint driveway. But the evidence failed to rebut the

7

presumption enjoyed by the plaintiffs that the prior use was adverse.

The chancellor found:  "While Martin and Bryant did discuss maintenance of the roadway, and Bryant did get permission before he paved the driveway, there was never any discussion between Martin and Bryant regarding Bryant's use of the portion of the road on Martin property, therefore there was no agreement which would rebut the presumption that the use was adverse."  These factual findings of no oral or written permission clearly are supported by the evidence.

It is true, as defendants point out, that Mr. Martin and Mr. Bryant each testified that Martin gave Bryant "permission" to use the entrance road.  However, the chancellor, as trier of fact, properly could conclude from all the evidence that what the parties meant was that both knew that a portion of the driveway and entrance was on the Martins' side of the property line, and that the defendants never prevented the Bryants from using the road.  Bryant agreed that what he meant by "getting permission" was that Martin "didn't object" to the use.

In sum, there was no "positive showing" sufficient to establish permissive use, and the trial court correctly so held.[*]

_____

[*] The trial court also ruled that plaintiffs had established an easement by implication.  Because we have determined the court properly found that an easement by prescription had been

8

Next, addressing issues raised by the cross-bill, defendants contend that the trial court "erred in concluding that the [plaintiffs'] operation of their trucking business did not constitute an actionable nuisance." The defendants argue that "the trial court, in concluding that no evidence supported the [defendants'] nuisance claim, arbitrarily disregarded uncontradicted testimony, of unimpeached witnesses, which was neither inherently incredible nor without support in the record."

We disagree with the defendants. In the first place, the chancellor did not conclude there was "no evidence" supporting the nuisance claim. Rather, the court determined the evidence failed to show that operation of the plaintiffs' trucking business caused "substantial harm" to the defendants' use and enjoyment of their property. In the second place, the testimony touching this issue was neither uncontradicted nor unimpeached.

When a business enterprise, even though lawful, becomes obnoxious to occupants of neighboring dwellings and renders enjoyment of the structures uncomfortable by virtue of, for example, noise, dust, or offensive odors, the operation of such business is a private nuisance. Nat'l Energy Corp. v. O'Quinn, 223 Va. 83, 85, 286 S.E.2d 181, 182 (1982). Even though the

proved, we do not reach the question whether there is an easement by implication.

9

term "nuisance" includes everything that endangers life or health, or obstructs the reasonable and comfortable use of property, not every trifling or imaginary annoyance that may offend the sensibilities of a fastidious person is actionable. Id.

We broadly construe an occupant's right to the use and enjoyment of land.  In this context, the phrase "use and enjoyment of land" contemplates the pleasure and comfort one normally derives from the occupancy of land. Bowers v. Westvaco Corp., 244 Va. 139, 145, 419 S.E.2d 661, 665 (1982).  Freedom from discomfort and annoyance while using land, which involves an element of personal tastes and sensibilities, is often as important to an individual as freedom from physical interruption in the use of the land.  Id.  However, the discomfort and annoyance must cause substantial harm to the individual, causing a material disturbance or annoyance in use of the realty.  Nat'l Energy Corp., 223 Va. at 85, 286 S.E.2d at 182; Smith v. The Pittston Co., 203 Va. 711, 717-18, 127 S.E.2d 79, 84 (1962).

In the present case, defendants claim the plaintiffs' trucking operation is a private nuisance because the evidence presented at trial established "that the total sum of the [plaintiffs'] activities would affect the sensibilities of an ordinary person."  They say they proved that the trucking operation was excessively noisy; created odor, dust, and

excessive traffic on the driveway; and caused dangerous and unsafe blockages of the entrance road. The defendants also claim that the use of the property by the plaintiffs overburdens any easement that has been acquired.

The defendants occupy a dwelling they built in 1993 on the remainder of the original 50.15-acre tract. The home, built about four years before the plaintiffs acquired their land, is approximately 1000 feet west of the plaintiffs' property. Access to the home from Route 460 is over the full length of the entrance road.

The evidence on the nuisance issue was in material conflict. A brief summary of the evidence offered by the opposing parties, rather than a detailed recitation, will be sufficient here.

Defendants' witnesses testified that, after plaintiffs purchased their property in 1997 and began their trucking operation, noise and traffic problems on the driveway escalated. Testimony offered by defendants showed that Bryant's trucking business was on a smaller scale than the plaintiffs', with no discernable noise associated with the Bryant operation but constant noise generated by the plaintiffs' business.

Mr. Martin testified that the noise from plaintiffs' property was "extremely loud all day, and it goes on into the night, all night." He stated the noise prevented him from

sleeping and otherwise affected him "emotionally." One witness for defendants described the noise: "It sounds like steel . . . being moved and banging and screeching." Mrs. Martin testified that the noise had been "very disturbing," and that there was "constant coming and going" on the driveway from "tractor-trailers, pickup trucks, cars" using plaintiffs' land.

The plaintiffs presented testimony directly contradicting defendants' evidence about the alleged noise level. For example, plaintiffs' witnesses stated that the trucking operation was not unduly noisy and that traffic on Route 460 at the location in question made more noise than did plaintiffs' vehicles. According to one of the plaintiffs, their trucks "meet every standard in the industry to eliminate noise."

Traffic congestion at the entrance to the driveway, according to plaintiffs, was caused in part by the design of the entrance. They supported Virginia Department of Transportation plans for improvement but defendant Martin refused to agree to the proposed modifications. According to the plaintiffs, Martin was more interested in putting them out of business by denying them access to their property than in improving the entrance. Martin testified: "I would love to see them shut down, yes."

The plaintiffs' evidence, comparing the scope of the Bryants' trucking operation (about which defendants did not complain) with the scope of plaintiffs' business, conflicted

12

with evidence on that subject offered by defendants.  The plaintiffs' evidence showed the businesses were similar. According to plaintiffs, Bryant initially was a "local short-haul" business, with frequent traffic in and out of the driveway; it then expanded to some interstate operations.  The plaintiffs' business primarily is "a road operation" as a "long-distance carrier," with fewer trucks than Bryants' using the driveway on a daily basis, according to plaintiffs.

Based upon the conflicting evidence, we cannot say that the trial court erred in finding the defendants failed to prove the plaintiffs' activities created a private nuisance.  The chancellor heard the evidence, viewed the premises, and was entitled to assess the credibility, including the bias, of the respective witnesses.  Indeed, the chancellor stated on the record he recognized that the Moores and the Martins were "angry and dislike each other and each has motivation to be less than totally honest and candid because each has an interest in the suit."  As the plaintiffs note, the defendants never complained to the plaintiffs about noise until the cross-bill was filed, no mention of the subject having been made in the threatening letter of May 3, 1999.  This and other factors obviously caused the chancellor to give more weight to the plaintiffs' evidence than to defendants'.

The decision in Bowers, supra, heavily relied upon by the defendants, is clearly distinguishable from this case. The procedural posture of Bowers on appeal was different. There, we affirmed the trial court's judgment finding that the acts of the defendants constituted an actionable private nuisance. Here, we are being asked to annul factual findings declaring that no nuisance had been proved. Unlike the Bowers, the Martins are not armed with the trial court's finding in their favor.

Furthermore, the acts complained of in Bowers were more egregious and severe than was the alleged conduct of the plaintiffs here, even if all the defendants' evidence is accepted. For example, a truck staging operation was located about 25 feet from the Bowers' living room window. Vibrations created by moving trucks cracked the concrete pad on the rear porch of the Bowers' home. Mrs. Bowers incurred medical expenses because she became distraught, depressed, and very nervous as the result of conditions caused by the truck staging operation. The Bowers' children experienced adjustment disorders associated with these conditions. 244 Va. at 142-44, 419 S.E.2d at 664-65.

In sum, the court's ruling on this issue is not plainly wrong or without evidence to support it.

14

And, contrary to defendants' contention, the trial court correctly ruled that the plaintiffs have not overburdened the easement.

"When, as here, an easement by prescription has been established, the width of the way and the extent of the servitude is limited to the character of the use during the prescriptive period."  Willis v. Magette, 254 Va. 198, 204, 491 S.E.2d 735, 738 (1997); Virginia Hot Springs Co. v. Lowman, 126 Va. 424, 430, 101 S.E. 326, 328 (1919).  However, "a reasonable increase in the degree of use may be permissible in such an easement."  Willis, 254 Va. at 204, 491 S.E.2d at 738.

The following determination by the chancellor is fully supported by the evidence:  "The Bryants used the Moores' property in a similar fashion, and while the degree of use may have increased somewhat, the court finds that it has not been such a substantial increase that it places an additional burden on the Martin property."

Finally, still addressing the cross-bill, we consider whether the trial court erred in entry of a money judgment in favor of the Martins for damage to realty.

The Martins alleged that the Moores have trespassed by conducting "land disturbing activities" on the 5.75-acre parcel near a stream which feeds the Martins' "large man-made lake on their property" to the west of the parcel.  These activities,

which included daily washing of trucks, caused soil to run off into the stream resulting in deposit of silt in the lake.

Based upon the evidence, the chancellor found "that in altering their property the Moores adversely impacted the stream flows and therefore the property rights of the Martins as [to] the lake [have] been substantially impaired for ordinary recreational purposes."  The court found "that a repair to the situation could be done for approximately" $26,000, and entered judgment in that sum.

On appeal, the Moores do not contest the chancellor's findings of trespass.  Instead, they attack the money judgment on two grounds.  First, they dispute the correctness of the measure of damages applied by the court.  They say the court based its judgment upon the mere cost of repair to the lake without any evidence of diminution in the market value of the real estate.  Second, the Moores contend "the evidence did not establish with reasonable certainty the quantum of damages actually suffered by the Martins."

We will assume, without deciding, that the cost of repair was the proper measure of damages to be applied here.  We hold, however, that the Martins failed to establish the cost of repair to the lake and therefore did not meet their burden to prove the amount of damages with reasonable certainty.

The burden to establish the amount of damages with reasonable certainty does not require proof with mathematical precision; at a minimum, however, the claimant must present sufficient evidence to permit an intelligent and probable estimate of the amount.  Dillingham v. Hall, 235 Va. 1, 3-4, 365 S.E.2d 738, 739 (1988).  This the Martins failed to do.

The Martins merely presented evidence that it would cost $26,000 to remove 2,000 cubic yards of silt from the lake. There was no evidence, such as data or test results, regarding cubic yards of silt actually in the lake.  There was no evidence of any measurements or observations to determine the depth of the silt, or whether the condition spread over the entire lake bed or was limited to the area of the creek entrance.  At most, the Martins' evidence showed only that silt was present and that the Moores had been washing trucks nearby.

Therefore, because the trial court erred in entering the money judgment, that portion of the final decree awarding the Martins $26,000 against the Moores will be reversed and final judgment will be entered here in favor of the Moores on the trespass claim.  The remainder of the final decree will be affirmed.

Affirmed in part,
reversed in part,
and final judgment.