NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0179n.06

No. 17-1970

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| ELDON E. JOHNSON, Trustee of the Pamela B. Johnson Trust, | ) ) ) | **FILED**<br>Apr 05, 2018<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| APJ PROPERTIES, LLC, a Michigan limited liability company, | ) ) ) | |
| Defendant-Appellee. | ) ) ) | OPINION |

BEFORE: COLE, Chief Judge; WHITE and BUSH, Circuit Judges.

**JOHN K. BUSH, Circuit Judge.** Good easements do not always make good neighbors. And, as the present case makes clear, neither does sharing a bucolic lakeshore in the northern reaches of Michigan. Defendant APJ Properties, LLC ("APJ"), and the Pamela B. Johnson Trust (the "Trust"),[1] neighboring landowners on Round Lake in Charlevoix, Michigan, have sparred in court for more than a decade. Today we decide whether, through annexation of additional land to its property, the dominant estate, APJ has exceeded the scope of a prescriptive easement appurtenant that burdens the Trust's property for the benefit of APJ's property. Fatal to the Trust's claim is that it fails to allege that this annexation has led to any actual increase in or modification to APJ's use of the easement. We therefore affirm the district court's dismissal of the Trust's complaint for failure to state a claim.

---

[1] Plaintiff Eldon E. Johnson is the Trust's trustee and brings this action on behalf of the Trust.

**I**

APJ owns 304 East Dixon Avenue. APJ's neighbor is the Trust, which owns 306 East Dixon. Formerly to the west of 304 East Dixon was 300 East Dixon, a plot of land that APJ also owned but that APJ annexed to 304 East Dixon in 2010 to create a larger, unified 304 East Dixon. And to the west of that was yet another parcel of land also owned by APJ, 212 East Dixon.

In 2003, APJ successfully sued the Trust to establish a prescriptive easement over a two-track path that cuts along the littoral southern boundary of the parties' properties. The scope of APJ's easement over 306 East Dixon is coterminous with the easement's "historical[] use[] as reflected in the [Michigan state court records], which includes, but [is] not limited to[,] motor vehicle traffic, foot traffic and nonmotorized vehicle traffic."

APJ annexed 300 East Dixon in 2010 and constructed a boathouse on the newly combined parcel in 2011, prompting the Trust to sue APJ in state court. The Trust claimed that use of the easement by APJ's construction vehicles exceeded the easement's historically established scope. The suit was dismissed after a bench trial, the Michigan Court of Appeals affirmed the dismissal, and the Michigan Supreme Court declined review.

In 2015, APJ decided to add a wraparound porch and other improvements, including a bedroom over the garage, a fireplace and chimney, a patio and walkways, and outdoor stairs to the already-built house on 304 East Dixon. It encountered an obstacle: the City of Charlevoix denied a building permit because the new additions would violate the City's setback requirements. But APJ found a way: by annexing 212 East Dixon to 304 East Dixon (creating a yet larger 304 East Dixon), APJ would satisfy the City's setback requirements and gain approval to build the additions. So APJ granted itself a quitclaim deed to 212 East Dixon, taking care to state expressly that its easement over the Trust's land was excluded from the conveyance.

2

Problem solved? Not so fast. No sooner had the City granted APJ's renewed application than the Trust lodged an appeal of that grant. The Trust lost. And it lost its challenge to the grant in state court, too.

APJ built its porch and made the other improvements, all of which sit entirely on the unified 304 East Dixon lot. Except for some utility structures, which are accessed from a different route, none of the additions were built on 212 East Dixon. But the Trust quite literally wants the porch and the additions torn down and removed. Thus, hoping for better luck in federal court, the Trust sued APJ for misuse of the easement and for trespass, seeking money damages or an injunction. Specifically, the Trust seeks an injunction that would stop APJ's use of the easement altogether until APJ has ensured that its use of the easement will not facilitate its use of "structures on those parcels made possible by the combining of 212 E. Dixon with 304 E. Dixon." Alternatively, the Trust asks the district court to command the demolition of any structure made possible by that annexation, and to order the removal of the utility structures from 212 East Dixon.

The district court dismissed the Trust's complaint for failure to state a claim.[2] We affirm.

## II

Michigan substantive law governs this diversity action. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). We therefore apply Michigan law in accordance with the controlling decisions of the Michigan Supreme Court. *See Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001). If that court has not yet spoken, we predict how that court

---

[2] The district court stated that the Trust failed to allege facts showing any change in use of the easement. The district court also reasoned that consolidating two parcels through a deed that expressly withheld all easement rights to the property not benefitted by the easement cannot, as a matter of law, constitute "a material increase to the burden upon the servient estate or a new and additional burden." (R. 25, PID 171–72 (quoting *Delaney v. Pond*, 86 N.W.2d 816, 817 (Mich. 1957))). Similarly, the district court held that the Trust's trespass claim was not ripe because the Trust did not allege any additional use of the easement.

3

would rule in light of the decisions of the Michigan Court of Appeals and other "relevant data."

*Id.* (quoting *Kingsley Assocs., Inc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 507 (6th Cir. 1995)).

We review the district court's dismissal under Rule 12(b)(6) de novo; we accept all and only the facts in the Trust's complaint; we construe them in favor of the Trust; and we may affirm only if the Trust has not stated a "claim to relief that is plausible on its face." *See Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 830 F.3d 376, 382–83 (6th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### III

Under Michigan law, "[t]he owner of an easement cannot materially increase the burden of the easement or impose a new and additional burden on the servient estate." *Heydon v. MediaOne*, 739 N.W.2d 373, 379 (Mich. Ct. App. 2007) (citing *Delaney*, 86 N.W.2d 816). One way in which an easement owner might do that is to use the easement for the benefit of an estate other than the dominant estate. *See Schadewald v. Brule*, 570 N.W.2d 788, 791–92 (Mich. Ct. App. 1997) (holding that dominant estate holder had exceeded the scope of an easement appurtenant when it bought a new parcel of land adjacent to the dominant estate, constructed a garage on that new parcel, and proceeded to drive over the servient estate to reach the garage). But the Michigan courts have not held—nor do we have indication that they would likely in the future hold—that an easement owner may be liable for overburdening a servient estate when the easement owner has neither modified the kind nor increased the quantity of its use of the easement.

The Trust advances two primary arguments that it has stated a claim. First, it contends that APJ's annexing land to the dominant estate, as a matter of law, is a sort of "*per se* overburdening*" of the servient estate. Second, it argues that because APJ's porch and other additions necessarily required its annexation of 212 East Dixon (because without the annexation,

4

APJ would not have won permission to build the structures), the use of the easement to benefit 304 East Dixon benefits the land formerly called 212 East Dixon, thereby overburdening the easement.[3]

Both of these arguments miss the mark: under Michigan law, there must be a modification to the kind or quantity of APJ's *use* of the easement or else APJ cannot be said to have exceeded the easement's scope. Here, because APJ disclaims any right to use the easement in favor of the added parcel, and there is no assertion that APJ has used the easement in favor of the added parcel, the Trust's claims were properly dismissed.

As for its first argument, the Trust contends that courts in Massachusetts, Wisconsin, and Virginia have upheld liability for overburdening an easement when after-acquired property is added to the dominant estate. *See McLaughlin v. Bd. of Selectmen of Amherst*, 664 N.E.2d 786, 789–90 (Mass. 1996) ("[A]fter-acquired property . . . may not be added to the dominant estate . . . without the express consent of the owner of the servient estate . . . [and] absent such consent, the use of an easement to benefit property located beyond the dominant estate constitutes an overburdening of the easement."); *Gojmerac v. Mahn*, 640 N.W.2d 178, 184 (Wis. Ct. App. 2001) ("[T]he dominant estate cannot be enlarged."); *Ellis v. Simmons*, 619 S.E.2d 88, 91 (Va. 2005) ("An increase in the area of the dominant estate increases the burden of an easement upon the servient estate as a matter of law. . . . [A]ny increase in the burden of a prescriptive easement upon the servient estate, whether caused by a change of use or by an increase in the area of the dominant estate, is prohibited in Virginia.").

The Massachusetts and Wisconsin cases are inapposite. The Massachusetts case (and others cited therein) supports only the proposition that *use* of an easement that benefits property

---

[3] *See* Appellant's Br. at 20 ("Even if the same people are crossing [the easement] with the same frequency, they are using the easement to access a structure on 304 E. Dixon which is appreciably larger than it would be without the addition of 212 E. Dixon. The moment any user of the easement steps into the added garage or the added bedroom or onto the added porch, veranda or patio, that user is using 212 E. Dixon.").

*beyond* the dominant estate overburdens an easement. The Wisconsin case clarifies that the prohibition on enlarging a dominant estate refers to a statement in the Corpus Juris Secondum that provides, "[a]n easement appurtenant may not be extended by the owner of the dominant estate to accommodate other lands which he may own and for which the easement was not originally intended." *Gojmerac*, 640 N.W.2d at 184 (citing 28A C.J.S. *Easements* § 10 at 183 (1996)).

Although the Virginia case offers some support for the Trust's argument, we are not convinced that the Michigan Supreme Court would find it persuasive. In *Ellis*, the Virginia Supreme Court stated that annexing land to a dominant estate overburdens the easement as a matter of law. 619 S.E.2d at 91. But in the Michigan appellate case closest to ours, *Schadewald*, the court looked for more than mere annexation of new land to the dominant estate to find overburdening of the easement.

In *Schadewald*, defendants held an easement over neighboring property that led to their house. 570 N.W.2d at 791. The defendants acquired property adjacent to their original lot, on which they wished to build a garage. *Id.* at 791–92. But the zoning board required the defendants to first annex the after-acquired property to their original lot. *Id.* at 793. The defendants built their garage, drove over their easement as they always had, but instead of turning left to their original property, they turned right to their new garage on the after-acquired property. *Id.* at 795–96. The court declined the opportunity to make a ruling on annexing after-acquired property, choosing instead to hold in favor of the plaintiffs based on the rule that an easement cannot be used to benefit land other than the dominant estate. *Id.* This appellate decision is persuasive of how the Michigan Supreme Court would rule in this case. *See In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005) (explaining that decisions by intermediate state appellate

6

courts are "viewed as persuasive unless it is shown that the state's highest court would decide the issue differently" (citation omitted)). We therefore reject the Trust's first argument.

As for its second argument, the Trust has failed to allege that APJ's use of the easement actually benefits the land that was 212 East Dixon in any way. Indeed, the Trust has not even made conclusory allegations that, for example, APJ uses more or different vehicles along the path of the easement, or that there is greater foot traffic by guests who avail themselves of the newly built porch, or that anyone uses the easement to go to or from the land that was 212 East Dixon. Even drawing all reasonable inferences in the Trust's favor, we cannot see how APJ's construction of the porch and other additions (even though they required annexation of 212 East Dixon to gain zoning approval) alters APJ's *use* of the easement. The Trust therefore has alleged insufficient facts to state a claim. For the same reasons, the district court properly dismissed the Trust's trespass claim as unripe.

**IV**

It is clear that the Trust does not want APJ to continue to enjoy its prescriptive easement. But there is no Michigan law that treats the addition of land to a dominant estate as *per se* overburdening an easement appurtenant. Rather, it appears that only an increase or change in the actual *use* of an easement may overburden the easement. Using an existing easement to benefit after-acquired land is, to be sure, one way to effect such an increase. But the Trust has not alleged any such use here. We therefore **AFFIRM** the district court's dismissal of the Trust's complaint for failure to state a claim.[4]

_____

[4] APJ argues that "the district court's opinion can also be affirmed because, to the extent [the Trust's] claims were based on the use of the easement to access the improvements at 304 East Dixon, those claims were barred by res judicata and collateral estoppel." (Appellee's Br. at 24.) APJ argues that because "[the Trust] already filed an easement overburdening and trespass lawsuit against APJ [in state court] with regard to the construction and use of improvements to the property at 304 E. Dixon," and those claims were dismissed in state court, then "the scope of the Easement was also fully litigated." This argument is without merit. The combination of 212 with 304 E. Dixon did not occur until August 2015. The lawsuits that APJ contends have preclusive effect were resolved in 2007 and 2014 and they did not involve the effects of the 2015 merger.