Present:  All the Justices

MARY ANN E. AMSTUTZ, ET AL.

v.  Record No. 040134  OPINION BY JUSTICE CYNTHIA D. KINSER
                                          November 5, 2004
EVERETT JONES LUMBER CORPORATION, ET AL.

FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
William H. Ledbetter, Jr., Judge

The dispositive issue in this case is whether there was credible evidence to support the circuit court's finding, under the clear and convincing evidentiary standard, of continuous use of a road sufficient to establish a prescriptive easement for purposes of forestry, timbering, or logging.  Finding each claimant's use of the road insufficient to give notice to the servient landowner that an adverse property right was being exercised, we will reverse the judgment of the circuit court granting a prescriptive easement.

I.  PRIOR PROCEEDINGS

Everett Jones Lumber Corporation ("Jones") filed a bill of complaint to enjoin Mary Ann E. and David E. Amstutz[1] ("Amstutz") from interfering with Jones' use of a portion of a roadway known as "Brightwell Road" located in Spotsylvania County.  The disputed section of Brightwell

---

[1] David E. Amstutz was not originally named as a defendant but was later added as a necessary party to the proceedings.

Road runs in an easterly direction from a parcel of real estate owned by Jones across property owned by Amstutz to State Route 612.[2]  Jones alleged that Amstutz blocked the road by erecting a fence, placing obstacles across the roadway, and verbally denying permission to use the roadway, thereby preventing Jones from accessing its property from State Route 612.

Amstutz subsequently filed a bill of complaint against Elizabeth L. Thomas ("Thomas") seeking declaratory judgment as to whether Thomas had a right to use the same disputed section of Brightwell Road to access from State Route 612 a parcel of real estate owned by Thomas.[3]  By a decree of reference, the circuit court "combined" the two suits and referred them to a commissioner in chancery.  The issues before the commissioner were whether Jones and/or Thomas enjoyed an easement for ingress and egress over the Amstutz property to their respective properties and if so, the nature, extent, and description of the easement.

_____

[2] The portion of Brightwell Road not in dispute in this appeal runs in a southwesterly direction across the Jones parcel and other tracts of real estate.

[3] Initially, only Mary Ann E. Amstutz filed the bill of complaint against Thomas.  David E. Amstutz was later added as a party plaintiff.

In his report, issued after hearing evidence ore tenus and viewing the disputed roadway, the commissioner in chancery found that both Jones' and Thomas' use of the road had been uninterrupted for more than twenty years. The commissioner further concluded that the use had been continuous in that each one had utilized the "road over the Amstutz parcel when needed" to tend and harvest their respective tracts of timber. Finally, the commissioner found that Jones' and Thomas' use of the road had been open, visible, obvious, exclusive as to each one, adverse, and under a claim of right. Based on his view of the easement, the commissioner described the roadway as "obvious, with some significant shoulder banking, suggesting age." He noted that it was "a dirt road . . . located in a rural area that has not seen residential or commercial development."

Regarding the width of the easement, the commissioner in chancery concluded that it was sufficient to allow one lane of travel by a tractor trailer hauling timber logs, but that the "specific width varie[d] and [was] greater at curves than on straightaways." Although testimony about the width of the easement varied, the commissioner concluded "that 15 feet [was] the general width, but that [it] expand[ed] or fan[ned] out to a sufficiently wider

3

dimensions [sic] at the intersection with [State] Route 612 and at curves to permit the passage of timber harvest trucks."

Amstutz filed exceptions to the report by the commissioner in chancery. After considering those exceptions, the circuit court, in an opinion letter, approved and confirmed the commissioner's report except in one respect: the court added footage to the width of the easement in order to accommodate equipment used to harvest timber. In its final order, the circuit court enjoined Amstutz and their successors from "interfering with the use for agricultural purposes to-wit: forestry, timbering or logging purposes" by Jones and Thomas and "their respective successors in title, of the roadway crossing the property of Amstutz, . . . which roadway is established hereby as a prescriptive easement appurtenant to the properties" of Jones and Thomas, "the width of said roadway being clarified to be fifteen (15) feet together with temporary turns at the bends in the road and at the entrance of the public road sufficient to accommodate equipment appropriate for the removal of timber, not to exceed twenty (20) additional feet." Thereafter, Amstutz filed this appeal.

## II. FACTS

### A. AMSTUTZ PROPERTY

4

In 2000, Amstutz acquired approximately 29.77 acres of real estate that border State Route 612 in Spotsylvania County.[4] The parcel is the acreage through which the disputed section of Brightwell Road passes and lies between the Jones and Thomas parcels and the public road. According to Amstutz's estimation, the length of the road from State Route 612 across the 29.77-acre parcel to the Jones property is 1100 feet.

During the period from 1951 until 1999, the Amstutz property was owned by an entity referred to as "Chesapeake".[5] An individual who had managed Chesapeake's land from 1983 until 1995 testified the company had always assumed that there was a "prescriptive" right-of-way across Chesapeake's property from State Route 612 for the benefit of the parcels situated to the west. According to the land manager, the road now in dispute was obvious upon visual inspection and was the only access to both the Jones and Thomas tracts. Although he never saw anyone using the

---

[4] Prior to this purchase, Amstutz already owned a larger tract of property adjacent to the 29.77 acres.

[5] Various exhibits in this case reference Chesapeake Forest Products Company, The Chesapeake Corporation of Virginia, The Chesapeake Corporation, Chesapeake Corporation, and Chesapeake Forest Products Company, LLC. The relationship between those entities is not relevant to this appeal. They will be referred to collectively as Chesapeake, as did the witnesses.

road, he observed evidence of "truck traffic" because "the road was rutted."  At one point while Chesapeake owned the property, a gate was installed on the road to keep people from "dumping on the property."  This was done with Jones' permission, and Jones was given a key to the gate.

## B. JONES PROPERTY

Jones owns approximately 63 acres of real estate that it acquired by deed in 1952.  The deed described the tract as "lying on both sides of Brightwell [R]oad."  The property lies adjacent to and south of the Thomas parcel, and adjacent to and west of the Amstutz property over which the disputed roadway traverses.

The president of Jones testified that, since the acquisition of its property, the company has used the road in question from time to time "[f]or the purpose of inspecting the timber, checking lines, disease control — bugs," and determining when to cut the timber and reforest the area.  The only access to the Jones property was via the road across the property now owned by Amstutz, according to Jones' president.  The company had never been denied use of the roadway until Amstutz blocked the route.

The timber on the Jones property was harvested in the late 1950s or early 1960s.  Daniel F. Mastin, Sr., age 76, testified that he had harvested timber during the same time

6

period but on property located adjacent to the Jones property. Mastin had been familiar with the disputed roadway all his life and had used it when he cut timber on the adjacent property. However, he stated that, during his timber harvest, only empty logging trucks exited via the road over the property now owned by Amstutz while the loaded trucks exited in the opposite direction on Brightwell Road.

Several other witnesses testified as to their use of the disputed road. One had traveled over the roadway to reach the Jones property in 1973 for the purpose of conducting a land and timber appraisal for the company. Others had accessed the Jones property via the disputed road at various times during the last 30 years in order to inspect growing timber, prepare a timber management plan, or "flag" the property lines. In fact, records from the Virginia Division of Forestry showed that seed trees had been marked on the Jones property in 1956. However, a natural resource specialist who had worked on both the Jones and Thomas parcels testified that he had permission from Chesapeake's foresters to travel across Chesapeake's land (now owned by Amstutz) when he had inspected the Jones tract. Other testimony also revealed that hunters had used the road for many years. The witnesses generally agreed

that the only access to the Jones property was by way of the disputed road across the Amstutz property.

## C. THOMAS PROPERTY

Thomas owns approximately 51 acres of real estate situated north of the Jones parcel and west of the Amstutz property.  The Thomas tract does not abut Brightwell Road because a portion of the Jones tract lies between it and the road.  However, the president of Jones acknowledged that Thomas has the "right to come over [the Jones property] for ingress and egress."  As with Jones, the issue is whether Thomas has an easement over that portion of Brightwell Road that traverses the Amstutz property.

Thomas acquired her property in approximately 1957 as an investment.  The intent was to replant the area and allow a stand of timber to grow.  After the replanting, Thomas received periodic reports from a forester about the timber growth.  Thomas' husband also inspected the timber about twice a year.  Thomas was not aware of any access to her property except by traveling over the disputed portion of Brightwell Road.  Thomas never asked permission from anyone to use the road.

Starting in 1994, Charles T. Wright, a consultant forester, used the disputed road to access the Thomas property for the purpose of locating and marking the

8

boundary lines, cruising the timber, conducting a sale of the timber, monitoring the timber harvest, and coordinating the reforestation of the Thomas property. Wright testified that, when he first traveled over the disputed road, "it had several mud holes" with "fresh ruts in [them]," indicating vehicular traffic on the roadway. There were no trees or shrubs growing in the road. Wright further stated that, during the timber harvest on the Thomas property, the road was improved and equipment used to harvest the timber traveled over the road. The logger who actually cut the timber stated that trucks loaded with logs exited the Thomas property via the disputed road.

Before the Thomas timber was harvested, an agreement was entered into between Thomas and Chesapeake (the owner of the Amstutz property at that time), which granted a temporary right-of-way over the now disputed portion of Brightwell Road to State Route 612. The stated purpose of the right-of-way was to transport timber from and to reforest the Thomas property. However, Wright testified that, at the time the agreement was made, no one voiced any objection to using the road; the agreement was mainly to provide for maintenance of the road during the timber harvest on the Thomas parcel. Chesapeake's former land

9

manager also agreed that the purpose of the agreement was for road maintenance.

## III. ANALYSIS

### A. STANDARD OF REVIEW

When a circuit court approves a report by a commissioner in chancery who heard evidence ore tenus, we will affirm the court's decree unless it is plainly wrong or without evidence to support it.  Shepherd v. Davis, 265 Va. 108, 117, 574 S.E.2d 514, 519 (2003); Snyder Plaza Properties, Inc. v. Adams Outdoor Advertising, Inc., 259 Va. 635, 641, 528 S.E.2d 452, 456 (2000); Ward v. Harper, 234 Va. 68, 70, 360 S.E.2d 179, 181 (1987).  Thus, we look at the commissioner's conclusions, as approved by the circuit court, and determine whether the conclusions are supported by credible evidence.  Chaney v. Haynes, 250 Va. 155, 158, 458 S.E.2d 451, 453 (1995).

### B. PRESCRIPTIVE EASEMENT

An easement is " 'a privilege without profit, which the owner of one tenement has a right to enjoy in respect of that tenement in or over the tenement of another person; by reason whereof the latter is obliged to suffer, or refrain from doing something on his own tenement for the advantage of the former.' "  Stevenson v. Wallace, 68 Va. (27 Gratt.) 77, 87 (1876) (quoting Goddard on Easements,

10

page 2); accord Brown v. Haley, 233 Va. 210, 216, 355 S.E.2d 563, 567-68 (1987); Bunn v. Offutt, 216 Va. 681, 684, 222 S.E.2d 522, 525 (1976).  The claimant of a prescriptive easement over the property of another must prove by clear and convincing evidence that "the claimant's use of the roadway in question was adverse, under a claim of right, exclusive, continuous, uninterrupted, and with the knowledge and acquiescence of the owner of the land over which it passes, and that the use has continued for at least 20 years."[6]  Martin v. Moore, 263 Va. 640, 645, 561 S.E.2d 672, 675 (2002); accord McNeil v. Kingrey, 237 Va. 400, 404, 377 S.E.2d 430, 432 (1989); Pettus v. Keeling, 232 Va. 483, 485-87, 352 S.E.2d 321, 323-24 (1987).  As we have previously explained, clear and convincing evidence is

> that degree of proof which produces in the mind
> of the trier of facts a firm belief or conviction
> upon the allegations sought to be established.
> It is intermediate proof, more than a mere
> preponderance but less than proof beyond a
> reasonable doubt.  It does not mean clear and
> unequivocal.

Oberbroeckling v. Lyle, 234 Va. 373, 379, 362 S.E.2d 682, 685 (1987); accord Fred C. Walker Agency v. Lucas, 215 Va. 535, 540-41, 211 S.E.2d 88, 92 (1975).  The dispositive issue in this appeal is whether there was "credible

---

[6] In this case, Jones and Thomas each had to establish, by clear and convincing evidence, the elements of a

11

evidence" to support the circuit court's finding that both Jones and Thomas had established by clear and convincing evidence continuous use of the road in question.  Chaney, 250 Va. at 158, 458 S.E.2d at 453.

With regard to the requirement of continuous use, Amstutz argues that there was no evidence that the disputed road was ever used to haul logs from either the Jones or Thomas parcels to State Route 612, except with the express permission of Amstutz's predecessor in title when the Thomas timber was harvested.  Thus, according to Amstutz, the infrequent use of the disputed road to access the Thomas and Jones parcels for purposes of checking timber growth, preparing reports, and marking boundaries was not sufficiently continuous as to give reasonable notice of an adverse claim being exercised against the owner of the servient estate.

Jones and Thomas counter that the road was used "as needed" to facilitate the growth, management, and harvest of timber on their respective parcels.  Jones points to the fact that 11 witnesses testified that there was no access to either parcel other than by traveling on the road in question and argues that the road was therefore necessarily used to harvest its timber in the late 1950s or early

prescribed easement.

1960s.  To show continuous use of the road, Thomas relies primarily on the periodic inspections of her timber after the property was reseeded in the late 1950s and the harvest of that timber in the mid 1990s.

In Pettus and Ward, we explained that, for a use to be continuous, it did not need to be "daily, weekly, or even monthly."  Ward, 234 Va. at 72, 360 S.E.2d at 182 (citing Pettus, 232 Va. at 488-89, 352 S.E.2d at 325).  Instead, to determine continuity, "the nature of the easement and the land it serves, as well as the character of the activity must be considered."  Id.; accord McNeil, 237 Va. at 404, 377 S.E.2d at 432.  The use must "be of such frequency and continuity as to give reasonable notice to the landowner that [such a] right is being exercised against him."  McNeil, 237 Va. at 404, 377 S.E.2d at 432 (quoting 2 Frederick D.G. Ribble, Minor on Real Property § 990, at 1274 (2d ed. 1928)).

In Ward, we held that use of the road in question by Dwight Harper, the dominant owner, had been continuous for a period of 29 years.  234 Va. at 72, 360 S.E.2d at 182.  The evidence showed that Harper, his parents, and grandparents had hauled " 'several hundred thousand feet' " of timber over the road once or twice each year.  Id. at 71-72, 360 S.E.2d at 182.  At times, the timbering included

13

using the road in question to take machinery to the property to skid the trees and to remove the logs with trucks. Id. at 72, 360 S.E.2d at 182. Harper also stated that, as he used the road, he frequently saw the owners of the servient parcel and that, in addition to using the road for logging operations, he also traveled over the road on many occasions to reach his property. Id. Thus, we rejected the servient owner's contention that the use had not been continuous. Id.

Similarly in Pettus, the dominant owners had used the road in question "periodically" over a span of 21 years for logging operations, including hauling pulpwood over the road at issue in both "single-axle trucks and large 'tractor-trailers.' " 232 Va. at 488, 352 S.E.2d at 325. We concluded that, "[c]onsidering the nature of the easement and the uninhabited land which it served, the lack of daily, weekly, or even monthly use for the required period of time did not . . . interrupt the continuity necessary to establish the easement." Id. at 488-89, 352 S.E.2d at 325. In other words, the road in question had been used as needed by the dominant owners. Id.; see also Willis v. Magette, 254 Va. 198, 203-04, 491 S.E.2d 735, 738 (1997) (continuity shown by constant use of the road in question to reach a dwelling house until it burned and by

seasonal use for farming, logging, and recreational purposes); McNeil, 237 Va. at 402-03, 377 S.E.2d at 431 (dominant owners used a dirt road "two to three times a month to carry feed to their chickens and hogs, twice a year to butcher hogs for themselves and others, twice a year to remove a hay crop, and two times annually thereafter to spray and harvest the apples from trees").

In contrast to the evidence in Pettus and Ward, there was not "credible evidence" in the present case to support the circuit court's finding that both Jones and Thomas had established, under the clear and convincing evidentiary standard, a continuous use of the disputed road sufficient to give reasonable notice to the servient owner that a right adverse to its property rights was being exercised. Chaney, 250 Va. at 158, 458 S.E.2d at 453. As to Jones, the evidence was undisputed that the timber on its property was harvested in the late 1950s or early 1960s. However, no one testified as to whether the logging trucks and equipment needed to harvest the Jones timber used the portion of Brightwell Road in dispute or, instead, traveled over Brightwell Road in the opposite direction, as was done when the timber on an adjacent parcel was harvested during the same time period. The remaining evidence demonstrated only a sporadic use of the road by Jones just for purposes

15

of checking timber growth, preparing management reports and appraisals, and marking boundary lines.

As to Thomas, her use of the disputed road, prior to the harvest of her timber, had been similar in frequency and purpose to that made by Jones. When the Thomas timber was harvested, the road was used but it was with the permission of Chesapeake, the servient landowner at that time. Witnesses on Thomas' behalf stated that the purpose of the written agreement between Thomas and Chesapeake was to provide for maintenance of the road, but that document, within its four corners, clearly granted her a temporary right-of-way for the purpose of transporting timber from and reforesting her property. See Wilson v. Holyfield, 227 Va. 184, 187-88, 313 S.E.2d 396, 398 (1984) (a court must construe a contract as written).

We acknowledge that the road in question was visible even before the Thomas timber was harvested. However, the fact that the road was used by persons for various purposes does not mean that there was a sufficiently continuous use by Jones or Thomas of such a nature as to establish a prescriptive easement for "agricultural purposes to-wit: forestry, timbering or logging purposes," as decided by the circuit court. Continuity must be determined by looking at "the nature of the easement and the land it serves, as well

16

as the character of the activity." Ward, 234 Va. at 72, 360 S.E.2d at 182. There is no question that, in order to establish a prescriptive easement for forestry, timbering or logging purposes, use of a road need not be daily, weekly, or monthly. To carry out those sorts of activities, which are generally seasonal in nature, does not require such frequent use of a road. But, the use must nevertheless be of sufficient continuity, in terms of the character of the activity and frequency, to give reasonable notice to a servient landowner that an adverse property right is being exercised. See McNeil, 237 Va. at 404, 377 S.E.2d at 432.

The necessary continuity was present in Ward where timber was hauled over the road in question once or twice each year, and machinery was taken over the road from time to time. 234 Va. at 72, 360 S.E.2d at 182. Similarly, in Pettus, the road in question was used for logging operations "periodically" over a span of 21 years. 232 Va. at 488, 353 S.E.2d at 325. Here, there was no timber harvested on either the Jones or Thomas parcels for over 35 years. So, for more than three decades, the only use of the disputed road was for sporadic visits to each of the parcels to check timber growth, prepare management plans or appraisals, and mark boundary lines. That limited use of

17

the road was not sufficiently continuous to give the servient owner notice that a right was being exercised against its property interests.

"[T]he law is jealous of a claim to an easement." Eagle Lodge, Inc. v. Hofmeyer, 193 Va. 864, 877, 71 S.E.2d 195, 202 (1952). That is so because "[t]he imposition of a prescriptive easement is the taking of a property right of the servient owner without payment of compensation." McNeil, 237 Va. at 406, 377 S.E.2d at 433. It is also one of the reasons why this Court decided that a claimant must establish a prescriptive easement by clear and convincing evidence. Pettus, 232 Va. at 486-87, 352 S.E.2d at 324.

CONCLUSION

For these reasons, we conclude that there was not "credible evidence" to support the circuit court's finding that both Jones and Thomas had established, under the clear and convincing evidentiary standard, a prescriptive easement over the road in question. Chaney, 250 Va. at 158, 458 S.E.2d at 453. Neither Jones' nor Thomas' use of the road was of sufficient continuity to give notice to the servient landowner that each one of them was exercising a right to an easement "for agricultural purposes to-wit:

18

forestry, timbering or logging purposes."  Therefore, we

will reverse the judgment of the circuit court.[7]

<u>Reversed and final judgment</u>.

---

[7] In light of our decision, it is not necessary to address Amstutz's remaining assignments of error.