Present:  Hassell, C.J., Keenan, Koontz, Kinser, Lemons and
Agee, JJ., and Russell, S.J.

ERNEST L. ELLIS, ET AL.                          OPINION BY
                                      SENIOR JUSTICE CHARLES S. RUSSELL
 v.  Record No. 042842                    September 16, 2005

GARLAND P. SIMMONS, ET AL.

                FROM THE CIRCUIT COURT OF BEDFORD COUNTY
                      James W. Updike, Jr., Judge

     This appeal presents the question whether a landowner,

seeking to establish a prescriptive easement over the lands of

neighboring owners, must show the boundaries of the land he

claims to be the dominant estate.

     The essential facts are undisputed.  Reid Jones, Jr.

acquired a number of contiguous parcels of land in the Diamond

Hill area of Bedford County, beginning in the 1960's.  Jones

died in 1996 and devised all of this property, then containing

about 232 acres, to The Joco Foundation.  Joco employed a

surveyor, Donnie W. Slusher, who subdivided all of the 232

acres into new tracts in 2002 and recorded the plat.  The

Slusher plat did not show the property lines of the numerous

parcels Jones had originally acquired.  The new tracts on the

Slusher plat had boundary lines entirely different from those

of the parent parcels Jones had acquired.

     In 2003, Garland P. Simmons and Carolyn P. Simmons (the

complainants) purchased 161 acres of the Joco property, shown

as Tract 11 on the Slusher plat, at a public auction.  The

plat showed an existing "old road bed" extending northward from a cemetery on Tract 11.[*] The "old road bed" connected to a "soil road" continuing northward to the northernmost point of the Joco property. From that point, the road departed from the Joco property and continued across three neighboring tracts to Diamond Hill Road (State Route 655). The owners of the three neighboring tracts were, respectively, Ernest Lee Ellis and Janet H. Ellis, Clayton P. Hurt and Emily F. Hurt, and Edwin C. Ellis and Elsie B. Ellis (collectively, the respondents.)

The complainants brought this suit, alleging that they and their predecessors in title had used the old road for a period in excess of 20 years under circumstances giving them a right to a prescriptive easement and that the respondents had obstructed the roadway by installing a locked gate. The complainants sought injunctive relief and a determination of their right to continuing and uninterrupted use of the road. The chancellor heard the evidence <u>ore</u> <u>tenus</u> and held that the complainants had met their burden of proving, by clear and convincing evidence, that the "right of way described in the Bill of Complaint is an easement appurtenant to the property

---

[*] It is conceded by the parties before the court that those who may have an interest in the cemetery have not been made parties to the suit and that their interests are unaffected thereby.

2

now owned by the complainants," fixing its width at twelve feet and enjoining the respondents from interfering with its use.  We awarded the respondents an appeal.

There are two assignments of error:  (1) That the complainants failed to establish by clear and convincing evidence that a prescriptive easement had been established, and (2) that the chancellor erred in failing to require proof of the boundaries of the property to which the easement was appurtenant.  Because we find the second assignment of error to be dispositive, the evidence may be summarized briefly.

The evidence showed that Reid Jones, Jr., around 1986, asked permission from the respondents and their predecessors in title to continue the use of the old road for ingress and egress.  They all agreed.  Later, Jones asked them to sell him an easement over the road, but they refused.  They never obstructed his use, but they and he evidently regarded his use as permissive.

The old roadway was shown on plats and was mentioned in descriptions in deeds as early as 1919.  Its physical location was shown on a U. S. Geological Survey map of the area.  The evidence showed that several families whose farms and homes had been dependent upon the road for ingress and egress had used it openly and continuously for many years prior to Jones'

acquisition of their properties. One witness testified to personal knowledge of such use as early as 1937. Those families were some, but not all, of the complainants' predecessors in title. There was no evidence that their use was permissive and no evidence that the respondents' predecessors had ever objected to or interfered with it.

The Slusher plat, which had subdivided all of Jones' 232 acres and which showed the complainants' land as "Tract 11," failed to show the locations and boundaries of the lands of the several former owners who had used the road. Slusher testified at trial that Jones had owned "other land" that had been included in his subdivision of the Joco property but the evidence failed to show the area or location of such "other land." The complainants' Tract 11 contained more acreage than the combined area of the parent tracts shown by the evidence to have been the former dominant estates. The conclusion is inescapable that Tract 11 contains some "other land" which was never shown by the evidence to have been appurtenant to the prescriptive easement.

The chancellor found that the complainants had established, by clear and convincing evidence, that Jones' predecessors had exercised open, visible, continuous and unmolested use of the roadway across the respondents' property for a period in excess of 20 years, raising the presumption

4

that their use was under a claim of right.  The chancellor further held that the presumption had not been rebutted, and that the prescriptive right they had obtained had become appurtenant to Jones' predecessors' lands before Jones acquired their properties and was not lost by Jones' subsequent permissive use or by his effort to purchase an easement.  The chancellor also found the evidence sufficient to establish the road's location and 12-foot width.

We will assume, without deciding, that the evidence supported the chancellor's ruling in all the foregoing respects.  Nevertheless, the complainants' failure to prove the boundaries of the dominant estate is fatal to their claim.

The chancellor's decree established a prescriptive easement over the lands of the respondents for the benefit of all the land owned by the complainants.  The decree thus had the effect of making Tract 11, as shown on the Slusher plat, the dominant estate to which the easement was appurtenant. The evidence, however, lacked any means of relating the modern Tract 11 to the parent parcels whose owners had used the road for ingress and egress to their respective farms and homes. Tract 11 contained additional land that had not belonged to the owners of those parent parcels, but the evidence failed to specify the location or area of such additional land.  The chancellor, therefore, was unable to tailor the final decree

5

to restrict the dominant estate to the property to which the easement had, historically, been appurtenant.  The result was to increase the burden of the easement upon the servient estates to an unknown extent.

The imposition of a prescriptive easement is the taking of a property right of the servient owner without payment of compensation.  Amstutz v. Everett Jones Lumber Corp., 268 Va. 551, 562, 604 S.E.2d 437, 443, (2004).  For that reason, we said, in Eagle Lodge, Inc. v. Hofmeyer, 193 Va. 864, 877, 71 S.E.2d 195, 202 (1952), "[T]he law is jealous of a claim to an easement."  It is also one of the reasons underlying our decision in Pettus v. Keeling, 232 Va. 483, 485-87, 352 S.E.2d 321, 323-24 (1987), to hold a claimant to a prescriptive easement to the burden of proving his case by clear and convincing evidence.  Amstutz, 268 Va. at 562-63 604 S.E.2d at 443.

The foregoing reason underlies the rule that the owner of the dominant estate may not increase the burden of the easement upon the servient estate.  Indeed, such an increase may, in some circumstances, cause the easement to be extinguished.  "[I]f the easement arises by prescription, a change in the dominant estate calling for a burden upon the servient land exceeding that devolving upon it by its customary use during the prescriptive period, if the increased

use is _inseparable_ from the former use, will operate an extinguishment of the easement."  1 Frederick D.G. Ribble, Minor on Real Property § 110, at 150 (2d ed. 1928) (emphasis in original).

In Va. Hot Springs Co. v. Lowman, 126 Va. 424, 430, 101 S.E. 326, 328 (1919), we held that the proposed future uses of a prescriptive easement must be of the "same nature and character" as those exercised during the prescriptive period and that an increase "in degree only" would be within the prescriptive use but only if "no additional burden is put upon the servient estate."  In McNeil v. Kingrey, 237 Va. 400, 406, 377 S.E.2d 430, 433 (1989), however, we went further and placed upon the claimant to a prescriptive easement the burden of showing affirmatively that any proposed change in his use of the easement will impose no additional burden upon the servient estate.  Indeed, we noted in Mobley v. Saponi Corp., 215 Va. 643, 645, 212 S.E.2d 287, 289 (1975), that "injunctive relief is routinely afforded to restrain the overburdening of easements."

An increase in the area of the dominant estate increases the burden of an easement upon the servient estate as a matter of law.  In Clark v. Reynolds, 125 Va. 626, 634, 100 S.E. 468, 470-71 (1919), we held that a party entitled to the use of a prescriptive easement could not "use it as an easement for the

7

benefit of any other place than that for which it was originally established." In <u>Robertson v. Robertson</u>, 214 Va. 76, 81, 197 S.E.2d 183, 187 (1973), we held that the owner of a dominant estate cannot use an easement for that tract to benefit any additional lands he may own because "such a result, which would necessarily enlarge the burden on the original right of way, is impermissible." <u>Accord</u>, <u>Conrad v. Strickler</u>, 215 Va. 454, 461, 211 S.E.2d 248, 253 (1975). Thus, any increase in the burden of a prescriptive easement upon the servient estate, whether caused by a change of use or by an increase in the area of the dominant estate, is prohibited in Virginia.

Here, the burden was upon the complainants to prove, by clear and convincing evidence, the boundaries of those lands of their predecessors in title that had become entitled to a prescriptive easement over the lands of the respondents. The complainants failed to carry their burden of proof. Instead of showing the boundaries of the original dominant estate, and thus enabling the chancellor to restrict the benefit of the easement to those boundaries, the complainants' evidence, by showing that additional land had been annexed to the original dominant estate, showed an impermissible increase in the easement's burden upon the servient estates. The chancellor

therefore erred in declaring the easement to be "appurtenant to the property now owned by the complainants."

For the foregoing reason, we will reverse the chancellor's decree and enter final judgment for the respondents.

<u>Reversed and final judgment.</u>