PRESENT:  All the Justices

KEVIN J. HORN, ET AL.

v.  Record No. 220230

JAMES WEBB, ET AL.

OPINION BY
JUSTICE STEPHEN R. McCULLOUGH
FEBRUARY 9, 2023

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Michael F. Devine, Judge

In this appeal we examine whether the circuit court correctly rejected Kevin and Meredith Horn's claim of a prescriptive easement over the property of James and Hong Webb and whether the circuit court properly awarded punitive damages.  We conclude that the evidence supports the circuit court's rejection of a claimed prescriptive easement by the Horns to store small watercraft on the Webbs' land.  We reverse the judgment below, however, in connection with the claim of a prescriptive easement to dock a boat on the Webbs' property.  Even if we assume that the original docking was permissive, the sale of the land vitiated the permission granted by the original owners.  No evidence indicates any of the subsequent owners granted any kind of permission to dock a boat on their land.  Finally, we reverse the award of punitive damages because nothing in the record establishes malice on the part of the Horns in filing their own lawsuit to vindicate their property rights.

BACKGROUND

I.      THE ORIGINAL NEIGHBORS CREATE AN EASEMENT AND DOCK A PONTOON BOAT ON LOT 612.

Lake Barcroft is a lakefront community in Fairfax County.  This litigation centers on three Lots of that community, Lots 612, and 613 and 615.  Lot 612 is a waterfront lot, whereas Lots 613 and 615 are landlocked.  In 1966, the Fidels owned Lot 612, the Robinsons owned Lot 613, and the Chappells owned Lot 615.  The Fidels granted a 20-foot-wide easement over Lot

612 to the owners of Lots 613 and 615 for the purpose of access to and from the lake. The Fidels

reserved the right to use this easement as well.

The 1966 Easement document includes a number of prefatory "whereas" clauses, or

recitals. The final such clause states the following:

> WHEREAS [the owners of Lots 613 and 615] have agreed to build
> a retaining wall along the shore of Lake Barcroft within the shaded
> area as shown on the attached plat on Lot 612 to be used by all the
> parties hereto, together with easements granted hereby to serve [the
> owners of Lot 615] over Lot 613 and Lot 612, and an easement to
> serve the [owners of Lot 613] over Lot 612 in the shaded area which
> is twenty (20) feet wide.

App. 384.

After recording this easement, the Chappells and the Robinsons built cement steps

leading down to the lake, as well as a retaining wall along the shore of the lake, on Lot 612. At

the same time, the Chappells and Robinsons also added a short light pole with electrical outlets.

Once they completed the retaining wall, the Robinsons tied a pontoon boat along the

retaining wall. In April 1976, the Robinsons and the Chappells jointly purchased a large electric

pontoon boat and kept the boat tied to the retaining wall on Lot 612. The boat purchased in 1976

was docked in that same spot until 2015, when it sank. On the same day this boat was towed

away, the Horns replaced the boat with another pontoon boat that has remained in that spot since

that time.

The Fidels sold Lot 612 to the Keelers in 1970. The Keelers sold the property to the

Crains in August 1976. The Chappells sold Lot 615 to the Horns in 2005. The Robinsons sold

Lot 613 to the Rustgis in 2013.

There is no evidence the Keelers or the Crains granted permission to anyone to tie the

pontoon boat to the retaining wall on their property at any time during their ownership of Lot

2

612. The evidence did establish that the neighbors were on friendly terms and held convivial gatherings on the Fourth of July and on other occasions.

With respect to the smaller watercraft, the Horns presented evidence that some smaller watercraft, such as canoes and skiffs, had been stored on Lot 612 for years. Mrs. Horn testified that ever since they purchased the land in 2005, the watercraft were stored on the same spot on Lot 612. A former neighbor, Ira Kirschbaum, also testified concerning the presence of small watercraft on Lot 612. However, aerial photographs from 1972, 1976, 1990, 1997, 2007, and 2009 did not show watercraft stored on Lot 612 in the manner Mr. Kirschbaum described.

II.      THE WEBBS ACQUIRE LOT 612 AND SEEK REMOVAL OF ALL THE BOATS.

The Webbs purchased Lot 612 in 2017. They demolished the original house and built a new one. After they moved in, the Webbs sent a letter to the Horns and Mr. Rustgi asserting that the 1966 Easement did not grant the right to dock a boat or store watercraft on the property. The Webbs requested that the Horns and Mr. Rustgi abide by the terms of the easement. The Horns and Mr. Rustgi refused, insisting that they held a prescriptive easement to store the small watercraft and dock the pontoon boat.

III.      ROUND 1: THE RUSTGI V. WEBB LITIGATION.

In July 2019, Mr. Rustgi filed his complaint in *Rustgi v. Webb*, CL-2019-10190, seeking a declaratory judgment that he had the right to dock a boat at the retaining wall based on either the 1966 easement or a prescriptive easement based on the prior owners' usage over many decades. The Webbs counterclaimed for trespass and nuisance and sought declaratory relief. The Horns were not parties to that litigation. The court (a different judge presiding) ruled in favor of the Webbs and against Mr. Rustgi. Following the ruling, Mr. Rustgi conveyed his one-half interest in the pontoon boat to the Horns for one dollar.

3

IV.     ROUND 2:  THE HORN V. WEBB LITIGATION.

Following their success in the litigation against Mr. Rustgi, the Webbs demanded that the Horns remove the pontoon boat as well as the watercraft stored on land.  The Horns refused and again asserted their right to continue these uses.  The Webbs filed a complaint against the Horns, alleging trespass and nuisance and seeking a declaratory judgment of their rights.  The Horns counterclaimed that they had acquired a prescriptive easement to dock the boat and to store the smaller watercraft.

The Webbs filed a plea in bar to the Horns' counterclaims, alleging that the Horns were in privity with Rustgi in the prior litigation and were bound by the court's adverse resolution of the claim of a prescriptive easement in that case.  The circuit court overruled the plea in bar.

Following a bench trial, the circuit court ruled in favor of the Webbs, awarding them compensatory damages in the amount of $11,550 and punitive damages in the amount of $45,000.  The compensatory damages award was divided as follows:  $3,300 in damages for the storing of the watercraft, and $8,250 for the trespassory docking of the pontoon boat.  The circuit court concluded as follows:  (1) with respect to the small watercraft, the Horns had failed to establish a prescriptive easement because the evidence did not show that their use was continuous; (2) with respect to the pontoon boat, the court concluded that the use began with permission and that the Horns did not offer evidence that they or the Chappells ever asserted a hostile claim to the use.  The fact that the lot was sold did not change this conclusion.  Finally, the court awarded punitive damages on the basis that once the Rustgi case was resolved adversely to Mr. Rustgi, with the court holding in that case that there was no prescriptive easement, the Horns' persistence in claiming a prescriptive easement was inexcusable and justified punitive damages.

4

ANALYSIS

"The claimant of a prescriptive easement . . . must prove by clear and convincing evidence that 'the claimant's use of the [property] in question was adverse, under a claim of right, exclusive, continuous, uninterrupted, and with the knowledge and acquiescence of the owner of the land over which it passes, and that the use has continued for at least 20 years.'" *Amstutz v. Everett Jones Lumber Corp.*, 268 Va. 551, 559 (2004) (quoting *Martin v. Moore*, 263 Va. 640, 645 (2002)). Clear and convincing evidence "is intermediate proof, more than a mere preponderance but less than proof beyond a reasonable doubt." *Id.* (quoting *Oberbroeckling v. Lyle*, 234 Va. 373, 379 (1987)).

On appeal, we view the facts in the light most favorable to the party who prevailed below. *Johnson v. DeBusk Farm, Inc.*, 272 Va. 726, 728 (2006). This Court will not disturb a circuit court's judgment in a bench trial "unless it is plainly wrong or without evidence to support it." *Hafner v. Hansen*, 279 Va. 558, 562 (2010).

I.   THE EVIDENCE SUPPORTS THE JUDGMENT OF THE CIRCUIT COURT THAT THE SMALL WATERCRAFT WERE NOT CONTINUOUSLY STORED ON LOT 612.

To prove a claim of a prescriptive easement, the claimant must establish that the adverse use was "continuous" for the required period, which, in Virginia, is 20 years. *Amstutz*, 268 Va. at 559. With respect to the small watercraft stored on the Webbs' land, the evidence was in conflict. Meredith Horn testified that the watercraft were stored in the same spot since 2005 – however, her testimony was insufficient to establish the requisite 20-year period. A former neighbor testified that the Chappells stored smaller watercraft on Lot 612. The circuit court found his testimony equivocal and in conflict with aerial photographs. The circuit court carefully assessed the evidence and made credibility findings. It concluded that the Horns had not established a prescriptive easement to store the watercraft on the Webbs' land. The

evidence, viewed in the light most favorable to the prevailing parties, supports the circuit court's determination. Accordingly, we affirm the circuit court's holding that the Horns did not meet their burden of proving the existence of a prescriptive easement to store small watercraft on the Webbs' land.

II. THE HORNS ESTABLISHED THE EXISTENCE OF A PRESCRIPTIVE EASEMENT TO DOCK A BOAT.

The circuit court found, and the record amply supports, the conclusion that the docking of the pontoon boat was "open, visible, continuous and unmolested since 1966."[1]

The Webbs contend that any use was not exclusive because both the Horns and their predecessors in title claim the prescriptive easement, as well as the Rustgis and their predecessors in title. We disagree. Both the Horns and Mr. Rustgi could claim a prescriptive easement. *See Nelson v. Davis*, 262 Va. 230, 236 (2001) ("[W]hen each user independently asserts his right to enjoy the way for himself, such use is exclusive even though others assert similar rights for themselves." (quoting *Pettus v. Keeling*, 232 Va. 483, 486 (1987))).

The principal question before the circuit court was whether the docking of the boat was "hostile." A claimant "is in *hostile* possession if his possession is under a claim of right and adverse to the right of the true owner." *Grappo v. Blanks*, 241 Va. 58, 62 (1991). "When used in the context of adverse possession, the terms *claim of right, claim of title,* and *claim of ownership* are synonymous. They mean a possessor's intention to appropriate and use the land as his own to the exclusion of all others." *Id.* The claimant need not make a hostile intention express. *Id.* A claim of right "may be implied by a claimant's conduct. Actual occupation, use,

---

[1] The fact that the boat sank in 2015 is immaterial for two reasons. First, by the time the boat sank, the period of prescription had already run and, moreover, the boat was immediately replaced.

6

and improvement of the property by the claimant, as if he were in fact the owner, is conduct that can prove a claim of right." *Id.* (citation omitted). In other words, hostility can be shown when the prescriptive easement claimant treated the property as an owner would.

Permission to occupy the land negates hostility. "A prescriptive right will not arise from the permission of the owner. It has been repeatedly held that the use of the land of another for any length of time, merely by permission, will not ripen into title." *Rives v. Gooch*, 157 Va. 661, 668 (1932). "When a use is open, visible, and continuous throughout the required prescriptive period, the claimant is entitled to a presumption that the use arose adversely or under a claim of right." *Hafner v. Hansen*, 279 Va. 558, 563 (2010). The burden is on the owner of the servient estate, in this instance the Webbs, to rebut "this presumption by showing that the use was permissive, and not under claim of right." *Johnson,* 272 Va. at 730 (quoting *Pettus*, 232 Va. at 485).

First, the Horns established a use that was open, visible, and continuous throughout the required prescriptive period. Therefore, they were "entitled to a presumption that the use arose adversely or under a claim of right." *Hafner*, 279 Va. at 563. The burden then shifted to the Webbs to show that the use was permissive. The Webbs offered no evidence of permission. At best, the Webbs offered circumstantial evidence of a permission to dock the boat that existed between the Fidels and the Chappells and the Robinsons.[2] No witnesses or documents established that one of the Webbs' predecessors in title after the Fidels granted permission.

---

[2] The circuit court concluded that the sixth "whereas" recital mentions an agreement and deduced from the evidence that this agreement must have been to dock the boat. The text of the recital says nothing about a boat, and no witnesses or documents established that the Fidels granted the Chappells and the Robinsons permission to dock their boat. We need not resolve the question of whether the evidence supports the finding of the circuit court that the unspecified agreement mentioned in the recital was to dock a boat.

Assuming the existence of an agreement between the Fidels, Chappells and Robinsons allowing the Chappells and Robinsons to dock a pontoon boat, the Fidels' permission would have ended when they sold the lot. The circuit court held that once permission is granted, it is presumed to continue indefinitely, even when the person who granted permission sells the land. We disagree. Permission is personal to the grantor:

> A license has been described as a right, given by some competent authority[,] to do an act which without such authority would be illegal, a tort, or a trespass. A license is personal between the licensor and the licensee and cannot be assigned.

*Bunn v. Offutt*, 216 Va. 681, 683 (1976) (citations and internal quotation marks omitted). Permission does not extend beyond the ownership of the person who granted permission. Therefore, a permissive use terminates when the owner who granted permission sells the property. *Johnson*, 272 Va. at 730 ("Even if this use were permissive, acquisition of the property by [another party] . . . constituted a 'change in circumstances and conditions' so that the use would not have continued to be permissive." (quoting *Eagle Lodge, Inc. v. Hofmeyer*, 193 Va. 864, 880 (1952))).[3]

---

[3] *See also Devlin v. The Phoenix, Inc.*, 471 So. 2d 93, 95 (Fla. Dist. Ct. App. 1985) ("A sale or conveyance of property to which a license has been granted effectively revokes the license."); *Schwenker v. Sagers*, 230 N.W.2d 525, 528 (Iowa 1975) ("We have held one manner in which a permissive use becomes adverse is by transfer of the servient property."); *Burkhart v. Zimmerman*, 214 N.W. 406, 407 (Mich. 1927) ("[A] conveyance of the land by the licensor ipso facto operates as a revocation of a license previously granted."); *Kruvant v. 12-22 Woodland Ave. Corp.*, 350 A.2d 102, 107 (N.J. Super. Ct. Law Div. 1975) ("[A] person who is using property by permission may become an adverse user by subsequent events where the servient estate is conveyed away."); *Foley v. Lyons*, 125 A.2d 247, 249 (R.I. 1956) ("It is admitted that [the original use] was permissive and by oral license. It therefore could not ripen into adverse use[] no matter how long continued provided such use[] was referable to the permission granted. However, this oral license was revoked by [a conveyance of the servient lot] . . . . After such conveyance complainants' use could mature into an easement if all the necessary elements were present and proved by *clear* and *positive* evidence." (citations omitted)).

Assuming without deciding that the agreement mentioned in the sixth "whereas" clause of the easement granted permission from the Fidels to the Chappells and Robinsons to dock a boat on the Fidels' lot, the Fidels' permission ended when they sold the lot in 1970.  The Webbs bore the burden of proving permission.  No evidence whatsoever establishes that the docking of the boat was with permission from any of the successors in title to the Fidels.  Therefore, the Horns established all of the elements for a prescriptive easement from 1976 forward.

The fact that prior owners of these lots were on friendly terms does not establish a permissive use.  Failure to object is acquiescence.  Acquiescence is not the same as granting permission.  *Clark v. Reynolds*, 125 Va. 626, 630-31 (1919).  In *Davis v. Wilkinson*, 140 Va. 672, 679 (1924), we observed that "[f]ailure to object to the use of the way is very often stated by witnesses as consent to its use, yet such consent is mere acquiescence, and acquiescence is one of the elements upon which the ripening of the use into a legal right rests."  A failure to object is not the same as granting permission.  In the final analysis, "[t]here is no just foundation in the evidence for any contention that the use . . . was in a legal sense by permission or under a license."  *Clark*, 125 Va. at 630-31.

Again assuming that the Fidels had some kind of agreement with the Chappells and the Robinsons that permitted the Chappells and Robinsons to dock their pontoon boat on the Fidels' lot, once the Fidels sold their lot, the Fidels' permission ended.  The Horns established their right to a prescriptive easement to dock a boat on the Webbs' lot.  We reverse the circuit court's contrary holding.

III.    PUNITIVE DAMAGES WERE NOT JUSTIFIED.

"[P]unitive or exemplary damages are allowable only where there is misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of

9

others." *A.H. v. Church of God in Christ, Inc.*, 297 Va. 604, 636 (2019) (citation omitted). "We have repeatedly stated that an award of punitive damages is not favored generally because punitive damages are in the nature of a penalty and should be awarded only in cases involving the most egregious conduct." *Bowers v. Westvaco Corp.*, 244 Va. 139, 150 (1992). Where there is no "fraud, malice, oppression, or other special motives of aggravation, damages by way of punishment cannot be awarded, and compensatory damages only are permissible." *A.H.*, 297 Va. at 637 (quoting *Xspedius Mgmt. Co. of Va., v. Stephan*, 269 Va. 421, 425 (2005)).

On appeal, this Court will "make an independent review of the record to determine whether it supports a finding of actual malice or wantonness by clear and convincing evidence." *Flippo v. CSC Assocs. III, L.L.C.*, 262 Va. 48, 59 (2001).

With respect to the claim of a prescriptive easement to dock the pontoon boat, the Horns are the prevailing parties. Consequently, no damages of any kind can be awarded against them as to that component of the case. Even with respect to the Horns' claim of a right to leave smaller watercraft on the Webbs' land, the record does not support an award of punitive damages. The Horns presented evidence from a neighbor to support their claim of a prescriptive easement. Although the circuit court credited the photographic evidence rather than the testimony of the Horns' former neighbor and ruled against them, that does not render the Horns' claim malicious.

The circuit court based its judgment on the fact that the Horns were aware of the prior lawsuit involving Mr. Rustgi and the Webbs. The circuit court reasoned that despite their knowledge that the Webbs prevailed in that earlier litigation, the Horns nevertheless pressed ahead with their own claim of a prescriptive easement. The Horns, however, were not parties to the prior lawsuit. The Rustgi lawsuit adjudicated Mr. Rustgi's rights, not the Horns' rights. The

10

circuit court in this case ruled that Mr. Rustgi and the Horns were not in privity. That decision

was not challenged and is now the law of the case. The fact that the Horns were pressing the

same claim of a prescriptive easement with the same or similar evidence does not render their

assertions of right malicious. To state the obvious, different lawyers can approach the same

claims differently, witnesses can be more or less persuasive in separate trials, and different

factfinders will vary in their appreciation of the persuasiveness of the evidence presented. The

fact that a prior lawsuit pressing a specific claim ended in defeat does not render malicious the

filing of a separate lawsuit by a different party, even when that lawsuit presses what is essentially

the same claim. Litigants who are not bound by a prior case are entitled to seek the vindication

of their own rights. For all these reasons, we vacate the award of punitive damages.[4]

## CONCLUSION

For the foregoing reasons, we will affirm in part and reverse in part the judgment of the

circuit court. We will affirm the circuit court's holding that the Horns do not have a prescriptive

easement to store small watercraft such as canoes on the Webbs' land, and we affirm as well the

award of compensatory damages on that point. We will reverse the circuit court's conclusion

that the Horns failed to establish the existence of a prescriptive easement to dock a boat on the

Webbs' land and to run electrical wires to keep the boat charged. Accordingly, we vacate the

award of compensatory damages awarded in connection with that claim. The Horns established

the existence of a prescriptive easement to dock a boat as well as to maintain the electrical wiring

---

[4] We have also reviewed the statements Mr. Horn made to the Webbs in correspondence, threatening criminal charges for trespass and stating that interfering with the Horns' rights would garner "plenty of unwanted attention." The trial court did not rely on these statements, and our independent review of the record leads us to conclude that they do not justify an award of punitive damages.

and outlet to charge the boat. Finally, we will reverse and vacate the award of punitive damages.

We remand the case for entry of an order consistent with the judgment of this Court.

*Reversed in part,*
*affirmed in part,*
*and remanded.*