COURT OF APPEALS OF VIRGINIA

Present:   Judges AtLee, Athey and White
Argued at Lexington, Virginia


WILLIAM E. ROGERS, ET AL.

                                        MEMORANDUM OPINION[*] BY
v.       Record No. 0704-24-3           JUDGE RICHARD Y. ATLEE, JR.
                                           JUNE 24, 2025

JANET LOUISE DUDDING


FROM THE CIRCUIT COURT OF CRAIG COUNTY
Joel R. Branscom, Judge

John S. Koehler (James A. Steele III; Law Office of James Steele,
PLLC, on brief), for appellants.

Elaine D. McCaffety (Lenden A. Eakin; Woods Rogers Vandeventer
Black PLC; Ferris & Eakin, P.C., on brief), for appellee.


This case involves the disputed ownership of two parcels of real property in Craig

County, Virginia. James L. Rogers ("Jim") and his first wife Pamela Rogers created a trust

during their marriage in which they placed their property.[1] Jim remarried after Pamela died, and

he used money from the trust to purchase the properties at issue, with him and his second wife

Janet L. Dudding, both receiving title with the right of survivorship. When Jim died, William E.

Rogers—Jim's son with Pamela—became the trustee and filed this suit to determine ownership

of the properties. After a commissioner in chancery determined that the properties belonged to

Janet, the circuit court adopted the commissioner's report and entered judgment in Janet's favor.

On appeal, William argues that: (1) the real estate transactions violated the trust agreement; and

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] This opinion adopts the names used by the commissioner in chancery to refer to
members of the Rogers family.

(2) the property remained Jim's separate property under the terms of his premarital agreement with Janet, notwithstanding his contrary intent. We disagree and affirm the circuit court's judgment.

## I. BACKGROUND

The material facts are not in dispute. Jim and Pamela were married for 45 years and lived in Idaho. They had three children: William, James ("Jimmy"), and JoAnne Baker, who predeceased her parents.[2] In January 2001, Jim and Pamela established the James L. and Pamela A. Rogers Trust under Idaho law, with Jim and Pamela as the grantors, trustees, and sole beneficiaries during their lifetimes. The trust agreement named William and Jimmy as contingent beneficiaries of the trust once both Jim and Pamela died.

Trust property was to "be held, managed, administered, and distributed" under the terms of the trust agreement. Section 3.1 of the agreement provided in relevant part that "[t]he Trustee shall pay to or apply for the benefit of the Grantors, or either Grantor, or the surviving Grantor, such sums from the income and principal, without limitation, as either or both Grantors, or the surviving Grantor, at any time request in writing." Unless otherwise specified, all distributions from the trust were to be considered the separate property of the individual distributee. And "[a]ny gifts made by the Trustee to third persons [were] considered to be transfers that [we]re first made to the Grantor or Grantors and then to the person receiving the gift."

The same day Jim and Pamela established the trust, Jim executed a will devising his personal property to his spouse and his residuary estate to the trust. Pamela died in October 2010, after which Jim became the sole trustee and beneficiary.

---

[2] Although Jimmy was named as a respondent below, his interests aligned with William in the circuit court, and he has joined William in this appeal. For simplicity's sake, we use William to refer to William and Jimmy collectively.

Jim married Janet in October 2011. They entered into a premarital agreement, under which they each relinquished all claims to the other spouse's separate property. Under section 5 of the premarital agreement, Jim and Janet could "transfer or convey to the other any property or interest therein which may be lawfully conveyed or transferred during his or her lifetime." Indeed, "neither party intend[ed] for th[e] Agreement to limit or restrict in any way the right and power to receive such transfer or conveyance." Despite that proclamation, section 5 continued that:

> Any such lifetime transfer or conveyance shall be void and of no effect unless it specifically refers to this paragraph of this Agreement and contains the following language:
>
> > This transfer is made pursuant to Paragraph 5 of the Prenuptial Agreement dated _____ between [JIM] and JANET.
>
> Provided, further, all such transfers shall be in writing and executed by the party making the transfer before a notary public.

The premarital agreement defined separate property as including, among other things, any property owned at the time of marriage, any property "acquire[d] during the marriage by . . . gift (including, without limitation, gifts from [the other partner] made in the manner required by Section 5)," and "property which may be distributed . . . during the marriage which is a part of the principal or income of any trust of which [the spouse] is or may be a beneficiary." Section 2.04(b) defined community property as including "[a]ny real and/or personal property acquired during the marriage that is titled in the names of both [Jim] and Janet (whether denominated as 'joint tenants', 'tenants in common' or otherwise)." And section 2.04(c) defined community property as including "Separate Property which either party shall, by a written agreement of transmutation executed in the manner required by Section 5, agree is henceforth to be considered as Community Property."

Section 15 of the premarital agreement provided that "[t]he failure of either [Jim or Janet] to insist on the strict performance of any of the provisions of this Agreement shall not be construed as a waiver of any subsequent default of same or similar nature." Finally, the agreement contained a choice-of-law provision stating that it was to be governed by Idaho law.

At the time Jim and Janet got married, the trust held title to Jim's Idaho home and around $430,000 in other assets. During his marriage to Janet, Jim purchased three parcels of land in Craig County, Virginia. William contests ownership of only two of the three parcels. One parcel was a 15-acre tract that Jim purchased in 2013 using money from the trust. Before the purchase, Jim and Janet discussed how to title the property. Jim wanted the property to be titled in joint ownership with survivorship because "he wanted Janet to have the property if he should die, and vice versa." Although she was initially "taken aback by this proposal," Janet agreed. Thus, the deed was drafted and recorded under both Jim and Janet's names, as joint tenants with the express right of survivorship. When Jimmy found out, he confronted Jim and demanded that Janet's name be removed from the deed, but Jim refused.

In February 2020, Jim, exercising his power as trustee, sold the Idaho home for $550,000. He used a portion of the proceeds of that sale to buy a residential property in Craig County to use as the couple's home. By that time, "Jim was seriously ill and did not expect to outlive Janet." Accordingly, he "specifically told Janet he wanted joint ownership with survivorship 'so [the property] would be hers.'" The deed was drafted and recorded under both Jim and Janet's names as tenants by the entirety with the common law right of survivorship.[3]

Jim died in November 2020, by which time the trust had around $10,000 in assets. William became the trustee, and he was later appointed the executor of Jim's estate. William

---

[3] The deed erroneously referred to Jim and Janet as "unmarried." Nonetheless, the parties stipulated to the commissioner that, if Virginia conveyancing law applied, it "would result in the survivor succeeding to full fee simple title" for both properties at issue.

filed a petition in the circuit court seeking aid and guidance regarding the ownership of the Virginia property, claiming that there was a conflict between Jim's will, the premarital agreement, Idaho law, and Virginia law. Janet filed a plea in bar and motion for summary judgment, which William opposed. With the parties' agreement, the circuit court referred the matter to a commissioner in chancery under Code § 8.01-607.

The commissioner held an ore tenus hearing at which he received documents and testimony from William and Janet. The commissioner found "that Jim considered the Trust assets to be his, to do with as he pleased" and frequently used trust money for various purposes without a "detailed accounting of his expenditures" or "formal records." But the commissioner found "no impropriety in this" because Jim was the sole trustee and sole beneficiary, "with full power to invade the principal of the Trust" and with "no fiduciary duties to anyone as to his administration of the Trust or consumption of its assets."

The commissioner further found that "Jim acted with clear donative intent toward Janet" and "intended to take title to the real property jointly with Janet, with the right of survivorship as provided by Virginia's law of conveyancing." In the commissioner's view, "a gift from Jim to Janet occurred in Virginia concurrent to each purchase." Those gifts were valid, the commissioner explained, because they fell under section 2.04(b), which pertains to property titled in both spouses' names and does not require the section 5 formalities. The commissioner also found that Jim's clear intent was to waive section 5 to the extent it applied. Accordingly, the commissioner concluded that Janet had the right of survivorship in both properties, which passed to her upon Jim's death.[4]

---

[4] The commissioner also found "that the doctrine of laches [was] sufficiently supported by the record." Thus, the commissioner wrote that the circuit court could, "within its discretion, apply [laches] to the instant claims."

The circuit court entered judgment in Dudding's favor "[f]or the reasons stated in the Commissioner's report." William filed objections to the court's order, and he now appeals.

## II. ANALYSIS

"When a circuit court approves a report by a commissioner in chancery who heard evidence *ore tenus*, we will affirm the court's decree unless it is plainly wrong or without evidence to support it." *Glasser & Glasser, PLC v. Jack Bays, Inc.*, 285 Va. 358, 369 (2013) (quoting *Amstutz v. Everett Jones Lumber Corp.*, 268 Va. 551, 558 (2004)). "[W]e look at the commissioner's conclusions, as approved by the circuit court, and determine whether the conclusions are supported by credible evidence." *Id.* (alteration in original) (quoting *Amstutz*, 268 Va. at 558). "This rule applies with particular force to a commissioner's findings of fact based upon evidence taken in his presence, but is not applicable to pure conclusions of law contained in the report." *Daly v. Shepherd*, 274 Va. 270, 273 (2007) (quoting *Roberts v. Roberts*, 260 Va. 660, 667 (2000)).

William asserts that the commissioner's conclusions, as adopted by the circuit court, were contrary to both the trust agreement and the premarital agreement. He contends that the trust agreement "evince[d] an intent" by Jim and Pamela "to preserve property, if possible, for their descendants" and that, to that end, the trust agreement limited Jim's authority to withdraw principal from the trust by requiring any such transaction to be "preserved in writing." William did not present that argument to the circuit court.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. The objection "must be both *specific* and *timely*." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)). "Making one specific argument on

an issue does not preserve a separate legal point on the same issue for review." *Edwards v. Commonwealth*, 41 Va. App. 752, 760 (2003) (en banc). A contemporaneous objection allows opposing counsel and the trial court a fair opportunity to address the challenge and prevent unnecessary appeals and retrials. *Bethea*, 297 Va. at 743-44.

In his petition, William told the circuit court that he needed aid and guidance because "[t]he provisions of [Jim's] will, the premarital agreement, Idaho law governing community property, and Virginia law concerning rights of survivorship and tenancy by the entirety cannot be harmonized." Aside from referring to himself as the trustee, William's petition did not mention the trust at all, let alone any specific provision of the trust agreement.

In his response to Janet's motion for summary judgment, William wrote that "there is the issue whether the sale of property of the inter vivos trust and conversion of the proceeds to purchase real estate titled in the name of [Jim and Janet] is contrary to the terms of the trust, the residuary clause of the will and the Premarital Agreement." That statement appears to be the first time that William indicated to the circuit court that the real estate transactions may have violated the terms of the trust. But that assertion was vague and did not identify any provision of the trust agreement that Jim purportedly violated, nor did it expressly claim that Jim could not access trust property without first making a written request. Accordingly, that statement fell short of the *specific* argument required to ensure appellate review.

In the absence of a transcript, we do not know the full extent of William's arguments to the commissioner, but "it is appellant's burden to present this Court with a record complete enough to demonstrate" error. *Wilkins v. Commonwealth*, 64 Va. App. 711, 716 (2015). "We cannot assume that appellant's objection and reasons were proffered but not made a part of the record." *Lee v. Lee*, 12 Va. App. 512, 516 (1991) (en banc). The commissioner never addressed whether Jim's withdrawals from the trust were required to have been in writing. Indeed, the

commissioner cited section 3.1 only once, for the proposition that Jim "had the right to all trust assets."

We also do not know the full extent of William's arguments to the circuit court concerning the commissioner's report. He objected to the court's final order on the ground that "the transfer of real property owned by the trust" was done "in a manner inconsistent with the terms of the trust and the prenuptial agreement." As with his response to Janet's motion for summary judgment, the missing element in William's objection is *why*.[5] Put simply, there is no evidence in the record that William ever argued, either to the commissioner or the circuit court, that Jim had no authority to purchase the property because he did not first request in writing that the trustee (himself) disburse the purchase money from the trust principal. William does not invoke any of the exceptions to Rule 5A:18, and we do not raise them sua sponte. *Spanos v. Taylor*, 76 Va. App. 810, 828 (2023). Accordingly, we will not consider William's argument that the transactions violated section 3.1 of the trust agreement.[6]

Next, we turn to William's arguments based on the premarital agreement.[7] In William's telling, to the extent Jim's withdrawal of the trust principal was lawful, those funds then became his separate property. Jim's use of that money to purchase real property in Virginia and title that

_____

[5] William's objection and his first assignment of error on appeal refer to the transfer of real property purportedly owned by the trust. The reference to real property is unclear, considering that William's argument appears to be directed at Jim's use of the trust's principal as purchase money for the real property. To the extent William means to argue that the trust purchased and kept the real property at issue in this case, that argument is undermined by the deeds, which named Jim and Janet as the grantees and did not mention the trust.

[6] Section 3.4 of the trust agreement provides that a withdrawal of trust funds "shall be made only by a written instrument signed by one of the Grantors, or by an expressly authorized agent under a durable power of attorney and filed with the Trustee." But not only did William not cite section 3.4 below, he does not cite it on appeal.

[7] The commissioner found that the doctrine of laches was supported by evidence in the record, but it is unclear whether the circuit court exercised its discretion to apply that doctrine. Accordingly, we do not resolve this case on that basis.

property in his and Janet's names operated as either an attempted transmutation of separate property into community property or a conveyance of Jim's separate property to Janet. Relying on section 5 of the premarital agreement, which provided that any lifetime transfer or conveyance from one spouse to the other would be void unless the transferring instrument contained specific language referring to section 5, William argues that Jim's attempted transfers to Janet were void and that the affected property remained Jim's separate property under the premarital agreement, which should revert to the trust under the terms of Jim's will.

There are two flaws in William's argument. First, we agree with the commissioner that the properties at issue constitute "real and/or personal property acquired during the marriage that is titled in the names of both [Jim] and Janet" under section 2.04(b). Unlike section 2.04(c), which governs the transmutation of separate property into community property, section 2.04(b) does not require that section 5 formalities be met for the property to be treated as community property.[8] And section 2.04(b) does not limit its application to property acquired with community property. As long as the property is acquired during the marriage and titled in both spouse's names, it is community property under section 2.04(b), and the source of funding is irrelevant.

Second, even if section 5 did apply to the transactions, we agree with the commissioner that Jim's undisputed donative intent waived strict compliance with the writing requirement.

---

[8] The apparent purpose of section 5 is to ensure the parties' separate property does not become community property unless the parties express such intent in writing. The title documents contemplated in section 2.04(b) accomplish that purpose. Put another way, section 2.04(b) does not mention section 5 because requiring the section 5 formalities in addition to the written title documents would be redundant. Moreover, "any apparent inconsistency between a clause that is general and broadly inclusive in character, and a clause that is more specific in character, should be resolved in favor of the latter." *Chantilly Constr. Corp. v. Dep't of Highways & Transp.*, 6 Va. App. 282, 294 (1988). Here, section 5 is the more general provision, while section 2.04(b) is the more specific one because it covers only one type of community property. Accordingly, the section 5 formalities are not required to create community property under section 2.04(b).

Under the premarital agreement, Jim or Janet's failure "to insist on the strict performance of any of the provisions of th[e] Agreement shall not be construed as a waiver of any *subsequent* default of same or similar nature." (Emphasis added.) As the commissioner recognized, that provision implies that failure to insist on strict performance of a provision could waive that provision for past conduct. And William does not argue that anyone other than Jim or Janet could bring a claim for breach of the premarital agreement. Because Jim had the clear intent to grant Janet the right of survivorship, and Janet had the clear intent to accept that right, the parties waived application of section 5 to the transactions.

The commissioner found that Jim intended to create a right of survivorship. William has not challenged that finding on appeal. Regardless of whether Idaho or Virginia law applied, the right of survivorship means that the property passed to Janet upon Jim's death. *See* Idaho Code § 15-6-401 ("Any estate in real property held by a husband and wife as community property with right of survivorship shall, upon the death of one (1) spouse, transfer and belong to the surviving spouse."); *Jones v. Phillips*, 299 Va. 285, 311 (2020) ("The 'right of survivorship' of a tenancy by the entirety means that '[u]pon the death of either spouse the whole of the estate by the entireties remains in the survivor.'" (alteration in original) (quoting *Vasilion v. Vasilion*, 192 Va. 735, 740 (1951)). Accordingly, we affirm the circuit court's entry of judgment in Janet's favor.

### III. CONCLUSION

For these reasons, the circuit court's judgment is affirmed.

*Affirmed.*